## LORD *vs.* BROWN and BOUCK.

In an action against a sheriff for trespass, where the defendant justified under a distress warrant for rent in arrear issued by J. L. as landlord, a person who had formed and expressed an opinion that J. L. had no right or title to the rent for which the distress was made, is incompetent to serve as a juror.

A sheriff or constable, when executing a warrant to distrain for rent, acts as the bailiff and servant of the landlord, and can justify only where the landlord could justify.

The officer must prove whatever would be required of a defendant in replevin under a common law cognizance for taking goods as a distress for rent.

And in trespass brought against the sheriff by one whose goods have been taken on a distress warrant, the landlord is incompetent to testify on behalf of the defendant on account of interest.

There is an implied contract on the part of the landlord to indemnify the person to whom he directs his warrant, if it should turn out that he had no authority to distrain.

In trespass where the defendant justifies under a distress warrant, for rent in arrear; and it appears that the plaintiff held under a lease, such lease must be produced by the defendant; and it will not be sufficient for him to show that the plaintiff had recognized the person who issued the distress warrant as assignee of the lessor, and had paid him rent prior to the accruing of that for which the distress was made.

ERROR to the Schoharie common pleas. The suit in the court below was by Lord against Brown and Bouck. It was an appeal from a justice's court, and was tried in the common pleas in June, 1846. The action was trespass for breaking and entering the plaintiff's close, and driving away a yoke of oxen and three cows. The plea was the general issue, with notice that the taking complained of was by virtue of a distress warrant issued by Jacob Livingston as landlord, to the sheriff of Schoharie county, or any of his deputies, to collect $69 rent in arrear from the plaintiff to Livingston, for the farm occupied by the plaintiff. The defendant Brown was sheriff and Bouck was under sheriff.

In empanneling the jury one Krum was challenged by the defendants and was examined without oath as to his fitness to serve as a juror. He said he understood that the action grew out of a seizure of cattle on a distress warrant issued by Jacob

Livingston for the rent of the plaintiff's farm claimed to be due nim; that he, Krum, lived on the same tract on which the plaintiff's farm was situated. He said he had formed and expressed an opinion that Livingston had no title to rent, though the laws might enable him to collect it; that he, Krum, had belonged to an anti-rent association, and had presided at an anti-rent meeting, and had declared that he would pay no more rent until the question of title was settled, and was of opinion that the landlord should show a clear, undisputed title before he should be permitted to collect rent. The court held that he was not an impartial juror, and he was set aside.

The taking and sale of the cattle under a distress warrant in March, 1845, were proved, both the defendants being present and acting. The plaintiff was present with a great number of persons disguised and armed to resist the sheriff, who, on his part, came with a large party to assist him. He finally prevailed and drove off and sold the cattle. They were taken from the farm of the plaintiff on which he had lived about thirteen years, and which was the same that had formerly been occupied by D. D. Snyder.

The defendant proved a distress warrant signed by Jacob Livingston, directed to the sheriff or his deputies, authorizing a distress on the farm occupied by the plaintiff, which, as it stated, was formerly leased by *John* Livingston to D. D. Snyder for $69 rent due to *Jacob* Livingston for the farm. There was an affidavit annexed sworn to by Jacob Livingston, to the effect that the sum above mentioned was due him from the plaintiff for the occupation of the premises by the plaintiff from 1st January, 1841, to 1st January, 1845. It was sworn to on the 13th of February, 1845.

Jacob Livingston was called by the defendants and objected to by the plaintiff's counsel on the ground of interest. The objection was overruled. The witness testified that the plaintiff was his tenant by lease of the farm formerly occupied by Snyder, the rent being 26 bushels of wheat and three fowls *per annum*. The plaintiff objected to the further examination o. the witness until the lease was produced, but the objection was

overruled. The witness then stated that the lease was lost or mislaid, that he had searched for, but could not find it. That the plaintiff came to the witness in 1832, and said he had purchased the lease of Snyder, and that he had come to pay the rent; that he continued to pay the rent until 1843. The defendants' counsel then inquired of the witness who was the landlord of the plaintiff. The plaintiff's counsel objected, but the objection was overruled; and the witness stated that the plaintiff had always acknowledged him as his landlord, until 1843; that the rent was paid voluntarily, there being no writing or contract between the plaintiff and the witness, by which the plaintiff agreed to pay rent to the witness; but the witness had no doubt but that a lease from John Livingston to Snyder was in existence, that it was executed about forty years ago; that said John Livingston died about 1822; that the witness began to receive rent from this farm in 1812, and had continued to receive it until 1843, first from Snyder and then from the plaintiff. The defendants' counsel asked the witness when he became the owner of the premises. The plaintiff's counsel objected, but the objection was overruled, and the witness said he became the owner in 1811. Exceptions were duly taken by the plaintiff's counsel to the several rulings of the court. There was some evidence which it is unnecessary to state touching the question whether the oxen were beasts of the plough.

The court charged the jury that if they were satisfied from the evidence that the relation of landlord and tenant existed between Jacob Livingston and the plaintiff, the defendants were protected by the distress warrant and affidavit, unless the oxen were beasts of the plough and there was other property which might have been taken. Verdict for the defendants, on which judgment was entered. The plaintiff brought error.

*A. Becker*, for the plaintiff in error.

*M. Sanford*, for the defendants in error.

Lord *v.* Brown.

*By the Court,* BEARDSLEY, Ch. J. It is not very easy to collect, from this bill of exceptions, the several points of law intended to be made by counsel, and which were determined by the court below. Some of these points, however, may be understood, and as I see no way in which the judgment can be upheld, I shall examine but one or two of the questions made, leaving others, which seem to have been glanced at if not distinctly presented, to be raised in a more intelligible form, both as to law and fact, on a future trial.

1. Jeremiah Krum was drawn as a juror, and was challenged by the defendant's counsel for principal cause, as was said, although no ground for the challenge was stated. Had the plaintiff made this objection to the challenge it should have been overruled without hesitation. But no such objection was taken, both parties appearing to have regarded the challenge as sufficient in form and substance. It seems to have been understood and disposed of as a challenge on the ground that the juror had formed and expressed an opinion that no such right existed as that set up by the defendants to justify what they had done, and which right would be directly in question on the trial of the cause. As the parties chose so to understand the objection in the court below, it should be so regarded in disposing of it here. Understood in this sense, the challenge was well taken, if in fact such an opinion had been formed and expressed by the juror, and this was a matter to be tried and determined by the court. On this point the juror was examined, and that without oath, when he ought to have been sworn. This was irregular unless the parties consented to an examination without oath, which, as no dissent appears to have been expressed, we must assume was given. What was stated in the course of this examination must therefore be regarded as competent evidence on the question, and it was thus clearly shown that such an opinion had been formed and expressed by the party challenged. His opinion was that the landlord, under and for whom the defendants acted, had no right or title to the rent for which the distress had been made. If this opinion was correct, the defendants had no pretence of a justification, and

the plaintiff would necessarily be entitled to succeed in his action. It would be a mere mockery of justice to submit such a question to the decision of such a juror, and his rejection was entirely proper. I have merely glanced at this part of the case without intending to discuss or dwell upon the law applicable to challenges of jurors. On that subject I refer to the late case of *Freeman* v. *The People*, (4 *Denio*, 9.)

2. I think Jacob Livingston was an incompetent witness for the defendants, on the ground that he was directly interested in the event of the suit. The defendants, although one was sheriff and the other under-sheriff of the county, were not acting, in what they did as such officers, but as the servants and bailiffs of the landlord. At common law a landlord might distrain in person, or by such agent as he thought proper to appoint for that purpose. But this rule was changed by the revised statutes, which provide that every distress for rent shall "be made by the sheriff of the county, or one of his deputies, or by a constable or marshal of the city or town where the goods are, who shall conduct the proceedings throughout." (2 *R. S.* 500, § 3.) Still, although the distress was required to be made by an officer, it was not strictly speaking an official act. It was not done under the authority of legal process, but in virtue of a mere private power of attorney, and the act could only be justified by showing the right of the principal to collect his rent by distress and sale. As was said in the case of *Webber* v. *Shearman*, "the only effect of the statute is to narrow the circle of selection," so that the landlord must act by an agent who is an officer. But "the remedy is still by the act of the party interested, not by process of law;" "and, however regular the papers on their face, no one would pretend that they will operate as a protection" to the agent "unless his principal has a right to distrain. In making cognizance he must, therefore, go back to the right of his principal, and show it as fully as the latter is bound to do in his avowry." (6 *Hill*, 29, 30.) The defendants, in the present case, having been employed by the landlord, (Jacob Livingston,) to act as his agents in making this distress, the law implies from such employment, a

promise on his part to indemnify them against all damages which they might be compelled to pay in consequence of his want of authority to authorize such distress to be made. Hence, his interest in the event of this cause was direct and palpable. If the plaintiff recovered because the landlord had no right to distrain for the rent, the judgment would be evidence against the latter, and he would be bound to indemnify the defendants against it. It might be otherwise if the action had been brought against the defendants on the single ground that the property taken was exempt by law from distress for rent. Perhaps the law would not imply a promise to indemnify an agent against such an abuse of his authority. But this is not a case of that character, for although suggestions were made that the oxen taken were exempt from distress, the action seems to have proceeded mainly on a denial of all right on the part of the alleged landlord to distrain for any rent whatever. Such being the nature of the action, the witness, (Jacob Livingston,) should not have been sworn until duly released. He was directly interested to defeat a recovery in the action, and having been improperly permitted to give evidence for the defendants, the judgment should be reversed.

In order to justify the alleged trespass of which the plaintiff complained, these defendants were bound to prove, substantially, every thing required to be stated in a common law cognizance in replevin for goods taken by way of distress for rent. ( *Wilk. on Repl.* 51, *et seq.;* 1 *Ch. Pl. ed. of* 1837, *pp.* 537, 8 ; 3 *id.* 1049 *and notes ;* 2 *Saund.* 284, (3).) It is certainly highly probable, looking to the long period of time during which rent was paid, without question, by the plaintiff to Jacob Livingston, that the right of the latter as set up by the defendants, was really too plain to admit of serious controversy. Still, I am not prepared to say that any such right was shown by the evidence as stated in this bill of exceptions. The lease under which the plaintiff held his farm was given by John Livingston ; it was therefore necessary to prove that his right and title had passed in some manner to Jacob Livingston. Of this it can hardly be said any thing like evidence was furnished. Nor, in strictness,

do I think there was competent evidence to show that any such lease was ever executed. Jacob Livingston can hardly be understood as saying he had ever seen it, and no proper ground was shown for the admission of secondary evidence of its contents. But if such evidence had been allowable, there was a total omission to prove what the lease was. It might well be asked, was it a lease in fee for life, or only for years? When was the rent made payable, and did the lease contain a clause of distress? In all these respects the case was bare of evidence, or it was vague and inconclusive. On another trial the rights of the several parties, as they were, may be fully disclosed by evidence. If rent was due, as claimed, and the landlord had a right to enforce payment by distress and sale, the defendants may justify; but they must prove their case, as all parties litigant are bound to do. It is not enough to say the case grew out of the anti-rent excitement, and on that ground demand judgment. We cannot yield to an abhorrence of what is called the anti-rent movement, marked as it has been by violence, arson and bloodshed, and decide this or any other case otherwise than as we believe is according to the settled law of the land. On that foundation the rights of all, tenants as well as landlords, rest, and it shall be our purpose, as it is our duty, to apply the law faithfully to every case, whatever may be its character and whoever may be parties. I think the judgment of the common pleas should be reversed and a *venire de novo* awarded.

Ordered accordingly