IN THE MATTER OF SIMEON KLOCK, A SUPPOSED LUNATIC OR PERSON OF UNSOUND MIND.

*Hearing before a commissioner appointed to inquire as to lunacy or unsoundness of mind — right of a contesting party to challenge jurors — testimony of non-expert witnesses as to the mental capacity of the person, when inadmissible.*

A contesting party, appearing before a commissioner appointed to inquire by a jury of the lunacy or unsoundness of mind of a person alleged to be incompetent to manage himself or his affairs, should be allowed to challenge jurors in accordance with the practice prescribed for the guidance and government of courts in obtaining an impartial jury.

In a proceeding of so important a character, which may result not only in committing the custody of the person, but the custody of the property of the party proceeded against, to another, great care and caution should prevail; and a juror ought not to sit who confesses that he has formed an opinion, "and that it would require some little evidence to overcome it."

Upon the hearing before a commissioner and a jury, appointed to inquire as to the lunacy or unsoundness of mind of one Klock, a person alleged to be incompetent to manage himself or his affairs. a witness, not an expert, who had already testified: "It seemed to be that his mind was very weak, but I could not call it

rational or irrational," was allowed, against an objection, to state that the impression formed upon his mind was that Klock was failing very fast, physically as well as mentally.

*Held,* that it was error to receive this testimony as to the impression made upon the witness' mind.

*Holcomb* v. *Holcomb* (95 N. Y., 316) followed.

APPEAL from an order, made by the County Court of Oneida county, confirming the finding of a jury, upon the execution of a commission issued to inquire as to the lunacy or unsoundness of mind of Simeon Klock, and appointing a committee.

The appellant, Simeon Klock, resides in the town of Vernon, Oneida county, and was eighty-one years old on the 30th of September, 1887. He has a wife named Barbara, who resides with him, and his children are Henry S. Klock, Andrew S. Klock, Robert Klock and Margaret E. Armour. On the 17th of November, 1887, the son, Henry S. Klock, verified a petition, addressed to the County Court of Oneida county, praying for the appointment of a committee, and that a commission issue to inquire of the "lunacy and unsoundness of mind of said Simeon Klock." The petition was accompanied with an affidavit made by Herbert H. Douglas, and an affidavit by Roswell B. Downing, and they were presented to the County Court on the 18th of November, 1887, and that court " ordered that a commission, in the nature of a writ *de lunatico inquirendo,* be issued out of and under the seal of this court, in the usual form, directed to John F. Tuttle, Esq., counselor at law of Oneida, Madison county, N. Y., to inquire, by a jury of the said county of Oneida and of the neighborhood where the said Simeon Klock resides, of the lunacy or unsoundness of mind of the said Simeon Klock, and whether he is incapable of managing his property, and that the sheriff of said county of Oneida be instructed in said commission to summon a jury in the manner required by law."

The inquisition was taken at the village of Oneida Castle, in the town of Vernon, in November, 1887, and the jury found, viz.: " That the said Simeon Klock, at the time of taking this inquisition, is a person of unsound mind and mentally incapable of managing his affairs or property, or properly taking care of his affairs, lands, tenements, goods and chattels." They also found that the value of his personal property did not exceed $2,400, and that he owned a

farm worth $10,000 and two brick stores in the village of Oneida worth $7,000, and that the value of the rents, income and profits of said property was $1,000 a year.

The appellant appeared before the commissioner to contest the allegations of the petition by counsel. The petitioner appeared by counsel, and after the jury was summoned by the sheriff the case showed that the following proceedings took place before the commissioner:

"NEIL DUROSS, was sworn and examined as to his qalifications to sit as a juryman and answered as follows:

"Examined by Mr. JENKINS:

"I am acquainted with the respondent Simeon Klock, and with his sons; I have talked with Henry Klock, the petitioner, about this case and about the property; I have not taken much interest in the case; I have formed some little opinion; I do not know as I have expressed it; I have heard several stories about it, and have formed some opinion, so that it would require some evidence to remove it; I have talked with Henry Klock twice about it; I guess I have heard him speak of it more than twice; I think only three times in all; I have had no conversation with him since I was summoned as a juror; I was summoned several days ago; I am friendly with Henry Klock; I have formed an opinion without hearing the evidence; Henry Klock talked with me about subpœnaing me as a witness; he did not subpœna me.

"Examined by Mr. CARSKADDAN:

"I would try and make an impartial inquisition in this case on the evidence, and I think I could; I have formed no opinion in this case that could not be overcome by the evidence.

"Re-examined by Mr. JENKINS:

"I did say I had formed some little opinion, and that it would require some little evidence to overcome it; I have not heard Henry say anything about the property. (The juror is challenged for cause by respondent and challenge overruled. Exception by respondent. The counsel for respondent challenges the juror peremptorily. The commissioner declines to allow the challenge and respondent excepts.

Thereupon the juror was sworn, and took part in the deliberations, and signed the inquisition.)"

On the 7th of December, 1887, the inquisition was presented to the County Court, and an order was made by that court "that the finding of the jury upon the execution of the said commission, as set forth in the said inquisition, be and the same is hereby confirmed," and Roswell B. Downing was named as a committee. An appeal is taken from that order, with a clause inserted in the notice of appeal "that the appellant intends to bring up for review upon such appeal the inquisition, and all proceedings had thereon, and the rulings and charge to the jury, and all questions connected with said case."

The case contained all the evidence, exceptions and proceedings had before the commissioner.

*Edwin S. Butterfield,* for the appellant Klock.

*C. Carskaddan,* for the respondent.

HARDIN, P. J.:

Section 2330 of the Code of Civil Procedure provides for a precept to the sheriff requiring him to notify not less than twelve, nor more than twenty-four, indifferent persons, qualified to serve and not exempt from serving as trial jurors in the same court, to appear before the commissioner, at a specified time and place within the county, to make inquiry as commanded by the commissioner. The sheriff must notify the jurors accordingly, and must return the precept, and the names of the persons notified, to the commissioner, at the time and place specified in the precept. The commissioners, or a majority of them, must determine a challenge made to a juror.

In *Tebout's Case* (9 Abb. Pr., 211) it was held that if a finding in such a proceeding as the one before us was induced "by any bias or opinion previously formed" there should be a new trial. *In the Matter of Wager* (6 Paige, 11) the chancellor declared that it was the duty of the sheriff "to select and summon such jurors as he thought proper, and who were indifferent in relation to the matter; that the commissioners were only authorized to decide upon the validity of challenges to jurors so selected"

Following that ruling, it is said, in Barbour's Chancery Practice

(vol. 2, p. 232 [ed. of 1843]), viz. : " The commissioners are author-ized to decide upon the validity of challenges to jurors." The same rule is repeated in the edition of 1875 (vol. 2 p. 233.)

Section 1176 of the Code of Civil Procedure provides that " upon the trial of an issue of fact, joined in a civil action in a court of record, or not of record, each party may peremptorily challenge not more than two of the persons drawn as jurors for the trial."

It is claimed, however, by the respondent, that the technical lan-guage of that section does not apply to the proceedings before us ; however that may be, we are of the opinion that a contesting party upon a hearing before a commissioner should be allowed to challenge jurors in accordance with the practice prescribed for the guidance and government of courts in obtaining an impartial jury. We think the learned commissioner committed an error when he refused to hold that the juror was not " an indifferent person," and in determ-ining the challenges adverse to the appellant.

In a proceeding so important as the character of the one in which the question arises, which may result not only in committing the custody of the person, but the custody of the property of the party proceeded against, to another, great care and caution should prevail ; and a juror ought not to sit who confesses that he has formed an opinion, " and that it would require some little evidence to over-come it." (*Lord* v. *Brown*, 5 Denio, 345 ; *Greenfield* v. *People*, 74 N. Y., 283.)

Chapter 427 of the Laws of 1873 provides that the determination in respect to challenges of jurors, both in civil and in criminal cases, may be reviewed. Chapter 475 of the Laws of 1872, in relation to challenges of jurors who had previously formed or expressed an opinion, or had an impression in respect to the circumstances involved in a trial, only relates to criminal cases, and that statute could not be invoked to aid the ruling before us.

In *Holcomb* v. *Holcomb.* (95 N. Y., 316) the rule is laid down in respect to non-expert witnesses, and the extent given to which their examination may be made, and their opinion delivered, and it is said that where they have " testified to facts within their knowledge and observation," they may characterize them as rational or irrational ; that the testimony from such witnesses must be limited to their conclusions from the facts testified to by them.

The witness Douglas was allowed to testify, against an objection, that the impression formed upon his mind was that Klock was failing very fast, physically as well as mentally. When the direct question was put to him as to the impression that was made upon his mind by the talk which he had detailed as to being rational or irrational, the witness was unable to answer in accordance with the rule stated in *Holcomb* v. *Holcomb* (*supra*), but the commissioner allowed the evidence to stand, in which the witness said, viz.: " It seemed to me that his mind was very weak, but I could not call it rational or irrational."

We think the order or confirmation should be set aside, together with the finding of the jury, and that a trial should be had in the County Court of Oneida county of the questions of fact arising upon the competency of Simeon Klock.

Findings of the jury set aside, and the order of confirmation reversed, and a new trial of questions of fact ordered before a commission and a jury to be appointed by the County Court of Oneida county, with the costs of this appeal to abide the final award in the proceeding.

FOLLETT and MARTIN, JJ., concurred.

Findings of the jury set aside, and the order of confirmation reversed, and a new trial on the questions of fact ordered before another commissioner to be appointed by the County Court of Oneida county, and the costs of this appeal to abide the final award of costs in the proceeding.