By the Court, Strong, J.
 

 It is stated, in the bill of exceptions brought up to this court by the writ of error, that Alexander Kyle, one of the jurors sworn and who sat upon the trial of the indictment, on being called as a juror, was challenged for principal cause, and, being examined under oath, testified, on his direct examination, that he had formed an opinion and expressed it, and, on his cross examination, that he had no fixed opinion, none which could not be removed by the evidence. The court thereupon overruled the challenge, on the ground that it did not appear that the juror had a fixed and absolute opinion, and the defendant excepted.
 

 A criticism was suggested on the argument, by the counsel for the people, that it was uncertain whether the opinion spoken of related to the question of the defendant’s guilt in respect to the charge in the indictment; but, although not so expressed in direct.terms, it is manifest that it did so, and
 
 *496
 
 was so understood at the trial. The defendant was to be tried on that charge. The indifference of the juror between the people and the defendant was the point of inquiry on the challenge. His opinion affecting his indifference only Could be inquired of, and he spoke of an opinion which might be changed by the evidence on the trial, from which it is apparent that he referred to an opinion on the main issue; and a like understanding by the court appears from the reason given for its decision on the challenge, that the proof did not, in the view of the court, show that the opinion was a fixed and absolute one; not that, if the opinion had been proved to be of that character, it would not have been a disqualification.
 

 The testimony of the juror on the challenge does not disclose clearly the precise state of his mind in relation to the case; but, on the contrary, it is ambiguous and susceptible of different constructions. That portion of it elicited on his direct examination, that he had formed and expressed an opinion, standing alone, would have called for his rejection; the residue, given on his cross-examination, that he had no fixed opinion, none which could not be removed by the evidence, may be interpreted as qualifying the previous statement, and to mean that he had only a hypothetical impression not affecting his indifference as a juror. It may, on the other hand, be interpreted to import merely that the opinion which he had formed and expressed was not so fixed that it might not be controlled by the evidence; regarding the latter branch of the expression as explaining and defining what the juror intended by saying he had no fixed opinion. In this view the ordinary force of his testimony, that he had formed and expressed an opinion in the case, would not be impaired. This testimony should be construed with liberality to the defendant, in the humane spirit which pervades our criminal laws and the rules of their administration. The right secured by law to a fair and impartial jury, with minds open to receive aM weigh the evidence, and balanced in regard to
 
 *497
 
 the matters to be tried, is of the highest importance, and . should be carefully guarded by the courts, especially in cases involving human life.
 

 In our opinion the latter interpretation above stated should prevail, and upon that .construction the -juror was clearly disqualified. His mind was preoccupied with an opinion upon the issues to be tried which it .would, require, evidence to remove; and that, upon principle and by. all the..-,cases, incapacitated him.for a juror.
 

 The testimony of the juror, on the challenge to him. for favor, which was -subsequently taken, cannot be .considered upon the question whether the challenge for principal cause was properly decided. The trial of the latter challenge was for the court alone, and it was to be decided upon the evidence taken by the court on that challenge only. The testimony upon the challenge for favor was addressed to the triers appointed to try that challenge, to whom alone it belonged to pass upon it and decide the challenge. Much less can the finding of the triers, on the challenge for favor, that the juror was indifferent, cure the error in the decision of the challenge for principal cause.
 

 Another question in the case arises upon the charge to the jury in relation to the evidence given by the defendant of his previous good character. A large number of witnesses had testified to the general good character of the defendant for peace and quietness, honesty and industry, and that it had been unexceptionable from his youth upwards. In respect to this evidence, and in connection with many just observations as to the importance and effect of proof of good character by a defendant in criminal cases, the justice stated to the jury that where the question was one of great and atrocious criminality, evidence of good character, and of a man’s habitual conduct under common circumstances, must be considered far inferior to what it is in the instances of accusations of a lower grade; but still, even with regard to the
 
 *498
 
 higher crimes, testimony of good character, though of less avail, was competent.
 

 A similar distinction as to the weight due to such evidence, between charges of high crimes and charges of crimes of the lower grades, was taken and presented to the jury in the case of
 
 The Commonwealth
 
 v.
 
 Webster
 
 (5
 
 Cush.,
 
 324), which was a very peculiar case, in which evidence of character may have been entitled to but little consideration, but I do not find the doctrine advanced in any other case.
 

 The principle upon which good character may be proved is, that it affords a presumption against the commission of crime. This presumption arises from the improbability, as a general rule, as proved by common observation and experience, that a person who has uniformly pursued an honest and upright course of conduct will depart from it and do an act so inconsistent with it. Such a person may be overcome by temptation and fall into crime; and cases of that kind often occur,, but they are exceptions; the general rule is otherwise. The influence of this presumption from character will necessarily vary according to the varying circumstances of different cases. It must be slight when the accusation of crime is supported by the direct and positive testimony of credible witnesses; and it will seldom avail to control the mind in cases where the testimony, though circumstantial, is reliable, strong and clear. But in cases where the other evidence is nearly balanced, but slightly preponderating against the defendant, the presumption from proof of good character is entitled to great weight, and will often be sufficient to turn the scale and produce an acquittal. I am unable to perceive why this presumption may not, and should not, as a general rule, be as controlling in cases of high crimes as in those of smaller ones. In a case of murder, arson, robbery or any other great offence, when it is apparent that it must have been planned and committed with great deliberation and the evidence against the accused is uncer
 
 *499
 
 tain, why should not proof of good character influence the judgment as powerfully as in any case? I can readily see that in cases of great crimes, evidently perpetrated with but little if any forethought, under the influence of some sudden and powerful motive, such proof will be comparatively weak, but it will be so in reference to any other crime with similar circumstances. The attending circumstances must, I think, determine the degree of force which evidence of good character should have; it is not in ordinary cases affected by the grade of the offence. Formerly such evidence was admissible in capital cases only, but now it will be received in criminal cases generally. (1
 
 McNally’s Ev.,
 
 320-323; 2
 
 Mass.,
 
 317; 18
 
 Ala.,
 
 720; 2
 
 Starkie,
 
 303; 2
 
 Bennett & Heard’s Leading Criminal Cases,
 
 159, 160;
 
 Burrill’s Circumstantial Evidence,
 
 530, 532.)
 

 The doctrine of the charge which has been considered was stated to the jury in such a manner as to be, if not in effect an instruction controlling the weight of the evidence, calculated to mislead the jury as to the weight which the evidence should receive; and affords, therefore, good ground, under the act of 1855
 
 (Laws of
 
 1855,
 
 ch.
 
 337,
 
 p.
 
 613), for a new trial. Section three of that act, after providing that every conviction for a capital offence, &c., shall be brought before the Supreme Court and Court of Appeals by writ of error, with a stay of proceedings as a matter of right, declares that the said appellate court may order a new trial, if it shall be satisfied that the verdict against the prisoner was against the weight of evidence, or against law, or that justice requires a new trial, whether any exception shall have been taken or not in the court below.
 

 I think it was competent and proper for the Supreme Court, at general term, to pronounce judgment in the case, upon the return of the record with the postea or record of the proceedings at the circuit; and that the present judicial system agrees with the former one in that respect.
 

 
 *500
 
 The other questions raised in the case need not be con sidered.
 

 The judgment must be reversed and a new trial be directed
 

 Ordered accordingly