NATHAN O. GREENFIELD, Plaintiff in Error, *v.* THE PEOPLE OF THE STATE OF NEW YORK, Defendant in Error.

Where, upon a criminal trial, the court is the trier of a challenge for principle cause, and also of a challenge for favor, the latter immediately succeeding the former, in the determination of the latter the court may take into consideration the testimony of the proposed juror given upon the former challenge ; as may also an appellate court having power to review the holding.

Under the act of 1873 (chap. 427, Laws of 1873), providing that either party may except to the decision of the court upon a challenge of a juror, and that upon a writ of error or *certiorari* the court may review such decision the same as other questions arising upon the trial, this court may review the determination of the trial court in a criminal action upon a challenge, both on questions of law and of fact.

One who has formed an opinion or impression, from the reading or report, partial or complete, of the testimony against a prisoner on a former trial, however strong his belief and purpose that he will decide the case on the evidence to be adduced, and will give an impartial verdict thereon, unbiased by that impression, cannot be readily received as a juror indifferent toward the prisoner and wholly uncommitted.

Upon a challenge for favor, on the trial of an indictment for murder, the proposed juror testified that he had read in a newspaper the account of the evidence for the prosecution upon a former trial of the prisoner under the same indictment, whereon the jury had failed to agree, and had heard others talk about that trial a good deal; that he had never expressed an opinion, but had an impression, from what he had heard and read, which led him to that opinion as to the prisoner's guilt, so that at the time he had an impression, opinion or belief which would take evidence to remove; that he believed that he could render a fair and impartial verdict upon the evidence, meaning by that that he would endeavor to weigh the evidence impartially, and render a verdict accordingly; that he would enter upon the discharge of his duties as juryman with an impression as to the guilt of the prisoner, which it would take evidence to remove, but he thought his previously formed opinion or impression would not bias or influence his verdict at all, and that he could decide the case fairly, according to the testimony, without reference to any previous opinion ; that his opinion or impression was formed on

the supposition that the evidence which he had read was true ; that he still entertained the same, and had never had cause to change or doubt the truth of it, and that he supposed he had an opinion against the prisoner as to his character as a man. The challenge was overruled. *Held,* error.

Another juror challenged for favor gave similar testimony, save that he did not directly answer the question whether it would take evidence to remove his impression. He testified that he thought he had expressed his impression, which he still had, but thought he could remove it, and would do it if sworn as a juror. *Held,* that the challenge was improperly overruled. *Greenfield* v. *The People* (13 Hun, 242), overruled.

*Thomas* v. *The People* (67 N. Y., 248) ; *People* v. *Honeyman* (3 Denio, 121) ; *People* v. *Thompson* (41 N. Y., 1) ; *O'Brien* v. *The People* (36 id., 276), distinguished.

(Argued May 22, 1878; decided September 17, 1878.)

ERROR to the General Term of the Supreme Court, in the fourth judicial department, to review judgment of the Court of Oyer and Terminer in and for the county of Oswego, entered upon a verdict convicting the plaintiff in error of the crime of murder in the first degree. (Reported below, 13 Hun, 242.)

The facts pertinent to the questions discussed appear sufficiently in the opinion.

*S. C. Huntington,* for plaintiff in error. On a challenge for favor the prisoner was entitled to a juror wholly unbiased, unprejudiced and indifferent. Such challenge is to be determined by the court, and an exception lies thereto. (*People* v. *Mallon,* 3 Lansing, 224–233; *Allen* v. *People,* 57 Barb., 338; *Cancemi* v. *People,* 67 N. Y., 501; *People* v. *Freeman,* 4 Denio, 9; *People* v. *Vermilyea,* 6 Cow., 108, 121, 122, 123, 128, 129 ; *Ex parte Vermilyea,* 6 id., 557, 562, 564, 565; *People* v. *Bodine,* 1 Denio, 281, 294, 295, 304, 305; *Lohman* v. *People,* 1 Cow., 379; *People* v. *Allen,* 43 N. Y., 28, 33; 1 Cow., 379; *Thompson* v. *People,* 3 N. Y. Weekly Dig., 479; *Smith* v. *Floyd,* 18 Barb., 523; *Rogers* v. *Rogers,* 14 Wend., 131; *Durell* v. *Mosher,* 8 John., 445; *People* v. *Mathews,* 4 Wend., 229.) Betts and Jennings having read and discussed the evidence of the former

trial as to circumstances, and believing it sufficient to establish guilt, were not competent jurors. (*Ex parte Vermilyea,* 6 Cow., 554, 557, 562, 565; *People* v. *Vermilyea,* 7 id., 121, 122, 123, 125, 126; *Rodgers* v. *Rodgers,* 14 Wend., 130; *Jackson* v. *Com.,* 23 Grattan [Va.], 919, 928; *Stauss* v. *Com.,* 74 Penn., 458; 75 id., 424; 11 Leigh., 657–663; *People* v. *Reges,* 5 Cal., 347; *People* v. *Reynolds,* 16 id., 129; *People* v. *Williams,* 6 id., 206; *Mayor* v. *State,* 4 Sneed. [Tenn.], 547; 7 Ohio [N. S.], 471; *People* v. *Gehr,* 8 Cal., 359; *Trimble* v. *State,* 2·Green [Iowa], 404, 411, 413; *Alfred* v. *State,* 37 Miss., 296; *Gray* v. *People,* 26 Ill., 344; *Moses* v. *State,* 11 Humphrey [Tenn.], 232; *Anderson* v. *State,* 14 Ga., 709; 14 Sargeant & Rawle, 292; *Morgan* v. *Stevenson,* 7 Ind., 169; *Rice* v. *State,* 7 id., 337; *Goodwin* v. *Blackley,* 4 id., 438; *Thompson* v. *State,* 24 Ga., 297; *Smith* v. *Eames,* 3 Scammon [Ill.], 76; 13 Sneed & Marshall R. [Miss.], 194; *Van Valkten* v. *McKillip,* 7 Blackf., 578; *McGregg* v. *State,* 4 Blackf. [Ind.], 101; *Irvine* v. *S. Bank,* 4 Watts & S. [Penn.], 190; *Meyer* v. *State,* 19 Ark., 156; 13 id., 757; *Bradford* v. *State,* 15 Ind., 347; *Westmoreland* v. *State,* 45 Ga., 225; *Nelmo* v. *State,* 130 S. M. &. M., 189, 500, 504; *Lee* v. *State,* 45 Miss., 114; *State* v. *Williams,* 3 Stew. [Ala.], 454, 466; *State* v. *Thompson,* 9 Iowa, 188; *Barclay* v. *People,* 8 Ala.; *State* v. *Webster,* 13 N. H., 491; *Speer* v. *Spencer,* 1 Iowa, 534; *Smith* v. *Wagpenseller,* 21 Penn., 491; *State* v. *Anderson,* 5 Harrison [Del.], 493; *McGowan* v. *State,* 9 Yerg., 184; *Johnson* v. *State,* Walker R., 392; *Sam* v. *State,* 130 S. M. & M., 189; *Payne* v. *State,* 3 Humphrey [Tenn.], 376; *Leach* v. *People,* 53 Ill., 311; *Louts* v. *State,* 7 Ohio, 471, 476; *Irving* v. *Kean,* 14 Y. & R., 292; *Gray* v. *People,* 26 Ill., 344; *State* v. *Bangor,* 11 Law Case, 607; *Norfleet* v. *State,* 4 Sneed, 340; *People* v. *Wiel,* 40 Cal., 268; Cowen & Hill's Notes to Phil. Ev. [ed. 1843], note 526, p. 744; note 464, p. 153; *Riggs* v. *Taylor,* 9 Wheat., 486; *Sewell* v. *Moses,* 1 John., 99, 102, 103; *Hoyt* v. *Moulton,* 21 N. H., 588; 38 id., 332.)

*J. J. Lamoree,* for defendant in error. The competency of the challenge was addressed to the sound discretion of the court or triers, and their determination was final and not the subject of review. (*Sanchez* v. *People,* 22 N. Y., 147; *O'Brien* v. *People,* 36 id., 276, 279; *Costigan* v. *Cuyler,* 21 id., 134; *People* v. *Mallon,* 3 Lans., 224; *Thomas* v. *People,* 67 N. Y., 218; *People* v. *Allen,* 43 id., 33.) The juror challenged for favor was competent, although he had heard the testimony, formed an opinion upon it, which he thought he had expressed, having stated that he was not prejudiced against the prisoner, and believed he could give him as fair a trial as if he had not heard anything on the subject. (*Pollard* v. *Com.,* 5 Rand., 659; *Brown's Case,* 2 Leigh., 769; *State* v. *Dorr,* 10 Ired., 469; *Baldwin* v. *State,* 12 Mo., 223; *Moran's Case,* 9 Leigh., 651; *State* v. *Potter,* 18 Conn., 166; *Smith* v. *Com.,* 6 Gratt., 696; *Trimble* v. *State,* 2 Greene, 404; *Sanchez* v. *People,* 4 Park. Cr. R., 535; *People* v. *Honeyman,* 3 Denio [*supra*], 121; *Freeman* v. *People,* 4 id., 34–35.) The juror challenged for principal cause was competent. (*Thomas* v. *People,* 67 N. Y., 218; *State* v. *Fox,* 1 Dutch. [N. J.], 566; *Louvenberg* v. *People,* 27 N. Y., 336; *Payne* v. *State,* 3 Humph. [Tenn.], 375; *Stokes* v. *People,* 53 N. Y., 164; *State* v. *Howard,* 17 N. H., 171; *State* v. *Spencer,* 1 Zabr., 196; *State* v. *Kingsbury,* 58 Me., 238; *Stamp* v. *Com.,* 75 id., 424; *People* v. *Stout,* 4 Parker, 71 id., 132; *O'Brien* v. *People,* 36 N. Y., 276; *State* v. *Lawrence,* 38 Iowa, 51; *People* v. *Williams,* 17 Cal., 142; *U. S.* v. *Wilson,* 1 Bald., 78; *Fellow's Case,* 5 Me., 333.)

*Per Curiam.* In the view which we take of this case, it will be sufficient, if we notice with any particularity, the points of the plaintiff in error, based upon the overruling of his challenges to two of the persons who were sworn upon the panel of jurors by which he was tried and found guilty.

One of them was challenged for principal cause, and as having formed and expressed an opinion. Both were challenged for favor, and as not being indifferent and impartial.

There has always been a distinction between these two kinds of challenge ; and there is yet, notwithstanding modern legislation on the subject.    The challenge for principal cause, asserts that there are facts, from which the law will say, that the person proposed to sit as a juror, is not indifferent between the parties.    If it is seen that a certain state of facts does exist, the law does *ipso facto*, declare that result. If one has expressed an opinion on the prisoner's guilt, it is a good ground of challenge for principal cause.    (*The People* v. *Vermilyea*, 7 Cow., 108; *The People* v. *Allen*, 43 N. Y., 28.)    Though he had not expressed an opinion, if he had formed one, upon reports and what he had read, which it would need testimony to remove, he was, by the old law, as a rule of law, disqualified.    (*People* v. *Mather*, 4 Wend., 229.)    Even though, if testimony should do away the circumstances on which the opinion was based, he would not believe the party guilty.    (Id.; *Cancemi* v. *The People*, 16 N. Y., 501.)

It has been held, that what is said by one proposed, on his examination on a challenge for favor, may not be referred to, to determine the correctness of the holding by the trial court on the challenge for principal cause.    (*Cancemi* v. *The People, supra*.)    We do not find that the converse has ever been held.    And where, as in this case, the court is the trier of the challenge for principal cause, and also of the challenge for favor, and the latter immediately succeeds the other, we see no reason why, on the determination of the latter challenge, it should not consider all that has been said by the person proposed as a juror, on his examination on both challenges ; nor why an appellate court, with power to review the holding on the latter challenge, should not have the power also to consider all that the proposed juror had stated, on examination on either challenge.

We are now ready to learn, what the challenged persons stated on oath, of their state of mind as to the prisoner's guilt.

One of them, Betts by name, had read in a local news-

paper a part of the account of a former trial of the plaintiff in error, on the same indictment,—that part only which gave evidence made for the prosecution ; he had heard others talk about that trial, a good deal ; he had never expressed an opinion, but had an impression, as to what he believed ; an impression which he had formed, as to the guilt or innocence of the plaintiff in error, from what he had heard and read as to it ; which impression had led him to that opinion as to his guilt, so that he had at the time of the impanneling of the jury such an impression, opinion or belief as to the guilt of the plaintiff in error, that would take evidence to remove. This juror said that he verily believed, that he could then render a fair and impartial verdict upon the evidence, that he meant by that that he would endeavor to weigh the testimony impartially and render a verdict accordingly, and that was all that he meant, but that he did not mean to take back, that he would enter upon the discharge of his duties as a juryman with an impression as to the guilt of the plaintiff in error which it would require evidence to remove, but that he thought that his previously formed opinion or impression would not bias or influence his verdict at all, and that he could take the case and decide it fairly according to the testimony without reference at all to any opinion he might have had. He also said that his opinion or impression was formed, on a supposition that the evidence which he had read was true, and that if sworn as a juror he would enter upon the trial with an impression as to the guilt of the plaintiff in error, and that at that present time he had an opinion as to his guilt, and that he supposed that he had an opinion against him as to his character, as a man. He also said that the opinion or impression was formed by him on reading the testimony in the newspaper, that he still entertained the same, and had never had cause to change, nor to doubt the truth of it. The challenges were overruled ; and exception was taken thereto.

The other juror, was Jennings. He was challenged for favor as not being impartial or indifferent between the Peo-

ple and the prisoner. He too had formed an impression as to the guilt of the prisoner from reading parts of the published testimony, and from the talk of people, which he thought he had expressed, which impression he still had; but he thought that he could remove it, and would do it, and would be sure to, if he was sworn as a juror, that he thought that he could render a verdict without being influenced by any impression or opinion that he might have had, and that it would not bias or influence his verdict, and that he verily believed that he could render an impartial verdict according to the evidence, notwithstanding any impression or opinion he might have formed.

The challenge to the favor was overruled, and exception was taking to the ruling. Jennings was then sworn, and acted as a juror upon the trial of the action.

It is well to determine here, just what weight is to be given to the word "*impression*" used by these persons, in describing their state of mind. They seek to distinguish it from an opinion. But one of them says that it was such an impression as would lead him to a belief or opinion of the guilt of the prisoner, and of that strength that it would take evidence to remove it, and that he made a slight distinction between an impression and an opinion. The other said that he styled his mental state more an impression than an opinion, but that he had an impression as to his guilt, and did not directly answer the question whether it would take testimony to remove it, saying that he would answer that if he accepted the obligation of a juror. Now it has been held that only an impression of guilt, if nothing which deserves to be called an absolute opinion, will not sustain a challenge for principal cause, where the juror sometimes had doubts as to guilt, and as far as any opinion had been formed, it was contingent and hypothetical. (*Freeman* v. *The People*, 4 Denio, 9.) But it is clear, that the jurors in this case, had more than a doubt. There had been an effect produced upon their minds, which remained, and which was so firmly lodged there that it needed a newcoming force to dislodge it.

They had received it into their minds as true that the prisoner was guilty, without certain knowledge of it, but upon proofs which they held satisfactory. And it matters not what the state of mind thus produced is christened, whether an opinion or an impression. There was existing such a decision of mind as to his guilt, as that further proofs must be produced, before that decision would be changed. So that we are justified in treating the conclusions of these jurors, as to the guilt of the plaintiff in error, as equivalent to what the books call an opinion, when treating of this subject. The late Supreme Court did, indeed, hold ; that on the trial of a challenge for principal cause, counsel could not put the question whether the proposed juror had an *impression* as to the guilt or innocence of the prisoner ; but it was upon the ground that the word, abstractly, generally means something which does not amount to a fixed or settled opinion. (*People* v. *Honeyman*, 3 Denio, 121.) But here it is the proposed juror who uses the word, but uses it not in accord with that case, and when he gives a statement of the condition of mind which he calls an impression, it appears that it is a fixed and settled state of it, which will need force of proof to remove. There is the same distinction between this case, and that of *The People* v. *Thompson* (41 N. Y., 1), and that of *O'Brien* v. *The People* (36 N. Y., 276).

It thus appears, that the plaintiff in error was tried and found guilty of murder in the first degree, by a jury, two of whom had formed, and one of whom had expressed such an impression that he was guilty, which impression each of the two still had, when he went into the jury-box ; an impression so strong, as that in the case of one of them, it would need testimony to remove it, and in the case of the other, it did not affirmatively appear, that it would not, and it was clearly to be inferred that it would.

On the other hand, the jurors who were challenged, each professed a purpose to render a fair and impartial verdict upon the evidence, and each stated his belief to be that he could and would do so.

The fact that each of these two jurors started upon the trial of the plaintiff with an impression against him is sure. It is a matter of that kind, which, though resting in unseen mental operations, is still capable of positive ascertainment. Impression or no impression, is a matter which can be determined as positively as any other of mental cognizance. When these persons stated that they had an impression that the plaintiff was guilty of the crime with which he was charged, they spoke of a matter which existed to their consciousness as plainly as any other operation of the mind, of which they took note. But when they stated that they would hear the evidence impartially, and would render a verdict, without being affected by that impression, it is clear that they were not speaking of an ascertained fact, but only of a purpose of mind, the carrying out of which depended very much upon the strength of will and general mental capacity of each of them. It was a matter entirely uncertain and problematical, which might or might not be attained. And it is said in *People* v. *Mather* (*supra*), that too much stress is not to be laid on such a declaration of a juror ; inasmuch as the disqualifying bias which the law regards, is one which operates unconsciously on the juror, and leads him to indulge his own feelings when he thinks he is influenced entirely by the weight of evidence ; and that if he is sincerely determined to discard his prejudices he is not to be received, qecause the law does not hold him capable of doing so. (*S. P. Freeman* v. *The People*, 4 Denio, 9.) This, however, seems somewhat conflicted with by the ruling in *Lohman* v. *The People* (1 N. Y., 379), where it was held a proper question to put to a juror : If he were sworn upon the jury would he disregard what he had heard and read out of court, and render his verdict upon the evidence ? The opinion of the juror was held relevant, competent, and primary evidence, entitled to a consideration, though by no means conclusive. But this again, is affected by the decision in *Cancemi* v. *The People* (16 N. Y., 501), where a juror was challenged for principal cause, and said that he had formed and expressed

an opinion, that he had no fixed opinion, none which could not be removed by the evidence.    It was held there, that the statement of the juror was to be taken as equivalent to saying that he had formed and expressed no opinion so fixed that it might not be controlled by the evidence ; but it was also held, that he was clearly disqualified, because his mind was pre-occupied with an opinion which it would require evidence to remove.

It is clear, that had the law, as it is to be deduced from these adjudications, remained unchanged, the judgment brought up by the writ of error must have been reversed.

But the Legislature has interposed by statute.    It has enacted ; (Laws of 1872, chap. 475, p. 1133) ; that the previous formation or expression and the present holding of an opinion or impression, in reference to the guilt or inno-cence of a prisoner, shall not be sufficient ground of chal-lenge for principal cause ; if the challenged person declares on oath that he verily believes that he can render an impartial verdict according to the evidence, and that such previously formed or expressed opinion or impression will not bias or influence his verdict ; and if the court is satisfied that such person does not have such a present opinion as will influence his verdict.    This act has been judicially declared constitutional.    (*Stokes* v. *The People,* 53 N. Y., 164.)

The two jurors did declare, on oath, that which the act calls for, and the trial court was satisfied that the opinion then held by them would not influence their verdict.

It may be that this would be final and conclusive upon the plaintiff in error, but for a later statute ; (Laws of 1873, chap. 427, p. 681); that all challenges of jurors shall be tried and determined by the court only ; and that either party may except to the determination, and upon writ of error or certiorari the court may review it, the same as other questions arising upon the trial.

Formerly a finding of triers upon a challenge for favor was final and not the subject of review.    (*Sanchez* v. *The*

*People*, 22 N. Y., 147.) And this was so when the court was substituted for other triers by consent of parties. (Id.) But now an appellate court has the power to pass upon the question involved in a challenge, so as to decide whether the trial court, acting as triers, committed error in its determination thereon. (*Thomas* v. *The People*, 67 N. Y., 218.) And the appellate court can review that determination both on questions of law and questions of fact.

There does not appear to be any question of law involved in the present inquiry. There was no exception pressed upon us, which was taken to the admission or rejection of evidence. The effect of the statute of 1872, in such a state of facts as this case shows, is, that the fact of forming or expressing an opinion or impression, or of having either at the time of the challenge, is not, as matter of law, conclusive proof of bias and unindifference. So that there is here, only the question of fact, whether the two persons proposed, or either of them, had such a bias against the prisoner, as not to stand indifferent. It is supposed that the judgment in the case of *Thomas* v. *The People* (67 N. Y., *supra*), is conclusive upon us upon that question. But there are important differences between that case and this; and we are not disposed to go further than we did there. There the opinion of the juror was hypothetical and contingent. It was dependent upon the truth of statements, upon the basis of which it had been formed. Those statements too were not statements made under oath, and spread before him in the shape of testimony from the witness-box; they were the unverified and unsolemnized talk of people. The impressions in the case before us are not hypothetical or contingent. Whether slight or deep, they were fixed and absolute. They were based too upon testimony actually given under oath, and with the care and attention produced by the solemnity and importance of a trial for murder. The testimony in that case (67 N. Y., *supra*), which fixed the homicidal act upon the accused person, was direct. Here it is circumstantial; and the same facts, which the mind of the

proposed juror had once received as so weighty as to produce an impression of guilt, were to be again presented to it as the proof that the plaintiff in error was the killer ; and we cannot exclude the idea that on a former trial of the plaintiff in error on this indictment, the jury had failed to agree on a verdict of guilty. It is therefore a case calling for great care that there be an absolutely indifferent jury to pass upon the circumstantial evidence that the prisoner was the slayer. It is true, that in each case (this and that in 67 N. Y., *supra*), the challenged person declares that it will need testimony to remove the opinion or impression. But in the one case, it is not certain that the talk of people will be reproduced in the evidence, and if it is not, the fact that it is not, is, in effect, the testimony which will be calculated to remove the impression. There is then a failure of testimony, which the juror must and will perceive, and which will affect his mind. In the other case, it is more than highly probable, it is as certain as any such human event not yet transpired, that the same testimony will be produced again. It has already been considered by the juror, and has satisfied his reason and produced belief, and can scarcely fail of doing so again. Each of the jurors, in the case before us, formed his impression from reading a report of the testimony given for the People. Entering the jury-box with that impression upon his mind, and having the same testimony again produced to him, before any in opposition is presented, that impression is too certainly to be deepened and fixed to be removed without difficulty. We are of the mind, that one who has formed an opinion or impression from the reading or report, partial or complete, of the crimnatory testimony, against a prisoner, on a former trial, however strong his belief and purpose that he will decide the case on the evidence to be adduced before him as a juror and will give an impartial verdict thereon, unbiased and uninfluenced by that impression, cannot be readily received as a juror indifferent towards the prisoner and wholly uncommitted. We have already given the views of judges upon this matter. How.

can it be determined or assumed, that the mind, which has already yielded to the force of facts presented to it through the medium of sworn witnesses, and has formed an opinion thereon, will, on a second hearing of the same facts through a like medium, come to a different conclusion, or even so far command itself as to calmly and judicially weigh them again in the balance of a fresh and unbiased judgment? Can that mind be unbiased in the second pondering, of the same testimony, which has already caused it to preponderate and settle to or towards a conclusion? We think not. Therefore we are of the opinion that the challenge to the favor should have been sustained.

It does not need then, that we consider the exceptions presented to us, on the rejection and admission of questions to witnesses. We are not prepared to say, that with the discretion confided in a trial court on the cross-examination of witnesses, the Oyer and Terminer went beyond the due limits. At the same time, it does seem to us that the district attorney was permitted to go to great lengths and fatiguing and exhausting particularity, repetition and ramification, in his cross-examination. And we would suggest that the ends of justice could be reached by a more concise sifting of the witnesses for the prisoner. We do not affirm or deny, however, that there was error in the rulings of the Oyer and Terminer on this head. It is sufficient that we see such error in the impanneling of the jury as calls for our interposition and for a new trial.

The judgment must be reversed, and a new trial ordered.

All concur, except MILLER and EARL, JJ., absent.

Judgment reversed.