DAVID PENDER, PLAINTIFF IN ERROR, *v.* THE PEOPLE OF THE STATE OF NEW YORK, DEFENDANT IN ERROR.

*Chapter 475 of 1872 — who competent to serve as a juror under.*

When a person is competent to sit as a juror in a criminal case under chapter 475 of 1872, although he has read an account of the crime in the newspapers and has formed an opinion as to the prisoner's guilt therefrom, considered.

WRIT OF ERROR to the Court of General Sessions of the city and county of New York, to review the conviction of the plaintiff in error of the crime of robbery.

*William F. Howe*, for the plaintiff in error.

*Benjamin K. Phelps*, district attorney, for the People.

DANIELS, J. :

The bill of exceptions made in this case contains only so much of the evidence as related to the competency of the jurors who were sworn to try the prisoner. No question appears to have arisen as to the sufficiency of the proof to establish his guilt, or as to the manner in which the case was submitted to the consideration and decision of the jury. But it has been claimed, in support of the writ of error, that jurors were allowed to try the prisoner who were incompetent on account of previously formed opinions. In the presentation of the case, the objections relied upon relate especially to the jurors Blackedge and Pollon. And according to the evidence returned, if the objections taken can be sustained at all, they were more favorably presented by the examination of these two jurors than that of the others mentioned in the bill of exceptions. It appeared upon the examination of the first of these jurors that he had read of the case and formed an opinion which, in the first instance, he stated was decided, but could be removed by the evidence, and that he would require evidence to remove it. This opinion, he stated, was based upon what he had read. Upon the examination of the district attorney, he stated that he could

render a verdict according to the evidence, without being biased or predjudiced, by the opinion he had formed. Upon further examination by the prisoner's counsel he added that he still did have an opinion which it would require evidence to remove, but that opinion he stated would not remain with him, that he would require evidence. Upon further examination he was asked, " do you now entertain any such opinion as would influence you at all in rendering your verdict ? " His answer was, " not at all, by any means." A further question was put to him by which he was asked whether his opinion would not interfere with his passing fairly on the merits of the case, if he was sworn as a juror, and his answer was, " not at all." The court then inquired, " you are impartial between the People and the prisoner ? " And his answer was, " yes, sir." Upon these answers being given the juror was sworn, and allowed to sit in the case. The other juror stated, substantially, in the same manner, that he had formed an opinion, but that it was not a decided opinion, but still it was one which would require evidence to remove, and upon further examination he was asked whether it would require evidence in the case to prove the prisoner's innocence, when he stated that it would, and that he would enter the jury box with the assumption that the prisoner was guilty. As this evidence stood he was clearly incompetent. But he probably did not comprehend the nature of the inquiry. For upon further examination by the district attorney he stated that his opinion was based entirely upon what he had read in the newspapers. He was then asked whether he entertained any opinion in regard to the transaction which would prevent him from fairly and impartially rendering a verdict on the evidence in the case, and his answer was, " not at all." A further question was also put, whether he had any bias or prejudice which would interfere with his rendering a just verdict according to the evidence, and he stated he had none whatever. The court then suggested that it was understood that he would enter the jury box, assuming that the prisoner was guilty, and his answer was, from what he had read in the papers — that it was based entirely on what he had read. He was then asked, if sworn as a juror, whether he would enter the trial assuming that the prisoner was guilty. He answered that he did not

know that; that there was certainly doubt about everything in the papers. "I base my belief on what I have read wholly, it would not have any effect upon my verdict, according to the evidence in the case."

A further question was then put to him, whether, assuming what he had read to be true, he believed the prisoner guilty, and whether that was all that he meant to say, and he answered, "that is all that I mean to say." He was then asked, "you enter the jury box without any decided opinion as to the truth or falsity of what you have read?" His answer was, "I do, sir." And unless you hear from witnesses that are called here evidence to satisfy you of the prisoner's guilt you would be prepared to acquit him?" "I should, sir." "You believe you can render a verdict impartially, according to the evidence, without any bias by reason of the impression which you now have?" His answer was, "I do, sir." He was further examined by the counsel for the prisoner as to whether at that moment he had an opinion as to the guilt or innocence of the prisoner, and his answer was that it had made an impression on his mind from what he had read, but he didn't know that it was true. He was further asked whether he had any prejudice or bias against the prisoner; he stated he had none whatever.

Upon the completion of this examination he was sworn as a juror in the case, and to the ruling allowing him to sit, the prisoner's counsel excepted, as he already had, to a similar ruling allowing the other juror to be sworn. It is evident, from the final answers of both of these jurors, that they either did not weigh or properly understand, the import of the questions first put to them, concerning the state of their minds, for after being examined and re-examined concerning it, their evidence finally resulted in the statement that they had no fixed or determined opinion which would influence their verdict or bias their judgment. Upon this appearing these two jurors were accepted under the conviction that their evidence had brought them within the provision of chapter 475 of the Laws of 1872.

This act was passed for the purpose of relieving courts of the difficulty, which had long been a growing one, of forming a jury for the trial of important criminal cases. By the general dis-

semination of knowledge, through the means of the public press, information of the occurrence and details of great crimes had been circulated through all classes of the reading community. And persons otherwise competent as jurors were found in that way to have formed opinions which, under the principles of the common law, rendered them incompetent to sit in the trial of such cases. The result was, that the reading and most intelligent portion of the community, to a very great extent, had to be excluded from the trial of offenders against the laws. The obstacle was a growing as well as serious one in the administration of justice, and in some cases rendered it next to impracticable to obtain a jury competent for the trial of a criminal offence, according to the rules of the common law. By those rules a person who had formed, or expressed, an opinion as to the guilt or innocence of the accused was rendered incompetent by that circumstance merely, even though he might, in the exercise of his intelligence and judgment, be able to lay that opinion entirely out of view, and to hear and determine the case according to the evidence given in the progress of the trial. To remove this obstacle the act mentioned was passed, and it was provided by it that the formation or expression of an opinion or impression, in reference to the circumstances, or to the guilt or innocence of a person charged with crime, should not be a sufficient ground of challenge for principal cause to any person otherwise legally qualified, provided the person who had formed or expressed such opinion or impression should declare, on oath, that he verily believed that he could render an impartial verdict according to the evidence submitted to the jury, and that such previously formed opinion or impression would not influence or bias his verdict; and provided, further, that the court should be satisfied that the person proposed as a juror did not entertain such a present opinion as would influence his verict as a juror. The act seems to have been passed on the theory that a qualified juror in other respects could exercise such degree of control over his mind as to prevent it from being influenced or biased in his consideration of the legal evidence heard by him, by an opinion previously formed upon what he had read or heard. It was not assumed that his opinion could or would be obliterated from his mind, but that he would be able to lay it

entirely out of sight, and then listen to the evidence, consider the case, and determine its effect without allowing his opinion to enter into his consideration of it. In all of these cases it is true, if the opinion is to be combated by evidence, that it certainly would require evidence to remove or overcome it. That is the nature of all opinions that, for the time being, have been formed and exist in the mind. Every person possessing such an opinion may truly answer that evidence will be required to remove or over-come the opinion if that is to be brought as an element into the trial, and it would then render every person who had formed an opinion an incompetent juror, notwithstanding the provisions of this act. But such was not the theory of the law ; it was, on the contrary, enacted upon the conviction warranted by the experience of intelligent persons, that they possessed such a degree of control over their opinions as to enable them to lay them aside when that shall become necessary for the purpose of impartially considering, in the more authentic form of sworn evidence, the grounds upon which they may have been formed.

Accordingly the law does not require that the opinion shall be removed, or that it shall cease to exist. But what it does require, upon the other hand, is, that the person having the opinion will be able to satisfy the court by his evidence that he possesses so much of control over it, and over his mental operations, as will enable him to listen to the evidence and determine the case sub-stantially in the same manner as though no opinion had previously found a lodgment in his mind. These jurors in their evidence finally testified to their ability so to control their opinions, and listen to, and weigh the evidence, and there was nothing in their previous examination which should discredit the statement that they finally made. And upon those statements, the court rightly deter-mined that they were competent jurors for the trial of the prisoner.

This act was considered in the case of *Thomas* v. *The People* (67 N. Y., 219), where substantially this construction was sus-tained by the judgment of the court. It was also brought up for consideration in the case of *Phelps* v. *The People* (72 N. Y., 334). The evidence of the juror in that case was more decided, as to the existence of his opinion, than that given by either of those sworn in the present case. For he stated that he did not know that he

could pass upon the evidence as free and unbiased as though he had never heard of the case, and added that he should hardly think he could. Upon being further examined he was asked whether the opinion would bias his mind, and his answer was, that it would in a measure. He was then inquired of by the court whether he believed he could render an impartial verdict according to the evidence, and answered that he thought he could, and a further inquiry was made, whether his previously formed opinion would not influence or bias his verdict, and he answered that he would not calculate that it should. "It might," he added, "but I would not intend to do it," and he answered finally that he thought he could render an impartial verdict in the case uninfluenced by any previous impression or opinion. That he would try to do it, and thought he could do it, but it was a hard question to answer by saying that he knew he could. This evidence as to the competency of this juror went further, and was much more decisive than that given concerning either one of the two jurors, sworn in the present case, and yet it was held that he was a competent juror in the case.

These authorities seem to be conclusive on the point now presented on behalf of the prisoner in support of this writ of error and distinguish this case from that of *Greenfield* v. *The People* (74 N. Y., 277), since decided by the same tribunal. In this last case the juror formed his opinion from reading the evidence, wholly or in part, given upon a preceding trial of the same case, and for that reason it was held, as the second trial involved a substantial repetition of that upon which the person had formed his opinion, that he was incompetent in the case, although he swore that he believed he could decide it without being influenced by the opinion he had so formed. This case is exceptional and has been placed entirely upon the existence of an opinion produced by sworn evidence, expected to be repeated upon the impending trial of the prisoner. As to others, where the opinion has been formed by the information conveyed by newspapers, or the statements of individuals, no such result is to be encountered, for they are not and cannot be reproduced upon the trial. But it must be governed entirely by the sworn testimony of the witnesses.

This will generally present a new combination of circumstances, a new channel of information, distinct, separate and entirely independent of that through which the preceding opinion may have been formed ; and for that reason the case of an opinion, not formed upon reading sworn evidence relating to the commission · of the offence, does not, of itself, render the person incompetent as a juror under this decision ; where, as in the present case, his final testimony establishes the fact that he can impartially hear and determine it without being biased or influenced by his preceding opinion.

That was the state of mind of these two jurors. For that reason they were properly accepted and sworn, and the prisoner's exception to the decision allowing that to be done cannot be sustained. No other point is presented for consideration by the writ of error in this case, and the result is, the conviction must be affirmed.

Brady. P. J., and Ingalls, J., concurred.

Conviction affirmed.