𝕾𝖚𝖕𝖗𝖊𝖒𝖊 𝕮𝖔𝖚𝖗𝖙—𝕲𝖊𝖓𝖊𝖗𝖆𝖑 𝕿𝖊𝖗𝖒—𝕱𝖔𝖚𝖗𝖙𝖍 𝕯𝖊𝖕𝖆𝖗𝖙𝖒𝖊𝖓𝖙.

*January*, 1883.

## PEOPLE *v.* WELCH.

JURORS—CHALLENGE FOR ACTUAL BIAS—GROUNDS OF—OPINION, WHEN DISQUALIFICATION—TRIAL OF CHALLENGE.

By the statute of 1872 (re-enacted in section 376 of the Code of Criminal Procedure), in respect to the formation or expression of an opinion

by a juror, as to the guilt or innocence of the prisoner, the legislature intended to remove the strict rule theretofore existing, which attached a disqualification to the fact of forming and expressing such opinion. That a juror has formed such an opinion is no longer, in any case, a legal disqualification, provided he makes the declaration specified in the statute.

The question of a juror's competency is to be determined as a fact, and each case must rest upon its own peculiar features.

Where the juror has read in a newspaper the evidence taken in a former trial, and formed an opinion therefrom, in a case where the evidence is circumstantial and the testimony is likely to be repeated, the juror should not be permitted to sit.

Although a juror has read about a case in a newspaper, yet if he have not a fixed and settled opinion, but merely an impression based upon a certain fact, or condition of facts, if proved to be true, and with such an opinion he would be governed by the evidence and render a verdict accordingly, he may be allowed to sit, if the court, under the circumstances, after seeing and hearing the juror, is of opinion that he is unbiased.

In the case at bar, a juror upon a murder trial was challenged under said section 376 for actual bias, and the only testimony taken upon the trial of the challenge was that of the juror. The court, after a review thereof, applying the above principles, held that the juror was competent.

Appeal from a judgment of the Herkimer County Oyer and Terminer, entered in June, 1882, upon a verdict of murder in the second degree.

The indictment charged the defendant with murder in the first degree, for deliberately and premeditately having caused the death of his wife, Margaret Welch, at the town of Little Falls, February 5, 1882. The defendant was sentenced to the Auburn state prison for life, and is now serving out his sentence.

Further facts appear in the opinion.

*Sewell S. Morgan*, for the prisoner, appellant.

*A. B. Steele*, district attorney, and *Albert M. Mills*, for the people, respondent.

HARDIN, J.—As this trial which we are called upon to

review, took place at the Herkimer County Oyer and Terminer, in June, 1882, the Code of Criminal Procedure is applicable to it. That Code took effect September 1, 1881. *Code Crim. Pro.* § 963 ; *L.* 1881, *c.* 442.

To George Snyder, a juror, a "challenge for actual bias" was taken by the defendant, as by sections 386, 368 and 366, he was authorized to do. Facts upon which the challenge rested being denied, the trial of the challenge was to be, and was, had before the court.

Section 383 of the Code of Criminal Procedure is, viz. : "Upon the trial of a challenge to an individual juror, the juror challenged may be examined as a witness to prove or disprove the challenge" . . . . Section 384, declares, viz.: "Other witnesses may also be examined on either side" . . . . .

No other witness was examined upon the trial of the challenge to Snyder, and the conclusion upon the question of fact involved in the trial was reached by the trial court, in the exercise of a sound discretion (§ 376), that George Snyder was a competent juror, after hearing and considering the testimony of Snyder, the juror. The same rules of evidence are applicable to such trial of a challenge as apply to the trial of "other issues." *Code Crim. Pro.* § 384.

It is expressly provided in section 455,of the Code of Criminal Procedure, that an exception may be taken to a decision " in admitting or rejecting testimony on the trial of a challenge for actual bias to a juror . . . . or in allowing or disallowing such challenge." In section 395 of the Code of Criminal Procedure, it is declared that "a challenge is an objection to trial jurors " . . . . either to the panel or " to an individual juror." Section 370 divides challenges into two kinds, viz. : "Peremptory," or, "second, for cause ;" and a challenge for cause is an objection to a particular juror, and it may be either general or particular. It is general when the objection is that the juror is "disqualified from serving in any case," or, secondly, it may be "particular, that he is disqualified from serving in the case on trial." § 375.

By section 376, " particular causes of challenge are of two kinds ;" the first is when there is " simple bias," and the second

is when there is "actual bias." The latter is the character of the challenge taken in the case now before us. That section sets down a rule for determining the question presented here, and we must consider the second subdivision of the section, which is as follows, viz.: "Second. For the existence of a state of mind on the part of a juror, in reference to the case or either party, which satisfies the court, in the exercise of a sound discretion, that such juror cannot try the issues impartially and without prejudice to the substantial rights of the party challenging, and which is known in this Code as actual bias." . . . . . .

It was the duty of the court, when the challenge was upon trial, to consider whether Snyder, the juror challenged, then had the existence of "a state of mind" in reference to the case or the defendant which satisfied the court, in the exercise of a sound discretion, "that the juror could not impartially and without prejudice to the substantial rights" of the defendant try the issue formed by the allegations of the indictment and the denial thereof by means of the plea of not guilty interposed by the defendant.

In considering the evidence furnished by the examination of the juror, the court was called upon to observe the language and spirit of that portion of section 376 of the Code of Criminal Procedure, which is a substantial re-enactment of the statute of 1872, in respect to the formation or expression of an opinion or impression by a juror. That portion of the section reads, viz.: "But the previous expression or formation of an opinion or impression in reference thereto is not a sufficient ground of challenge for actual bias, to any person, otherwise legally qualified, if he declares on oath that he believes that such opinion or impression will not influence his verdict, and that he can render an impartial verdict according to the evidence, and the court is satisfied that he does not entertain such present opinion or impression as would influence his verdict."

Under the act of 1872, which has been the subject of frequent judicial interpretation, several cases have been considered, and from those cases we may deduce the following results:

(1.) That the legislature intended to remove the strict and stringent rule existing before the legislation to which we have referred, which attached a disqualification to the fact of forming

and expressing an opinion, which led MARSHALL, Ch. J., to say, in 1 *Burr Trial*, 416, of such a juror, " that the law will not trust him ; " and which led to holding in many other cases, that a hypothetical opinion, or an impression simply, of the guilt or innocence of the prisoner, derived from rumor, or from reading newspaper accounts of the transaction, tended strongly to support a challenge for principal cause.   Balbo *v.* People, 80 *N. Y.* 494.

(2.) That the fact that a juror has formed an opinion of the guilt or innocence of a prisoner " is no longer in any case a legal disqualification, provided the juror makes the declaration specified in the statute."   Cox *v.* People, 80 *N. Y.* 513.

(3.) That the question of a juror's competency is to be determined, in each case, as a question of fact, and each case must rest upon its own peculiar features.   Balbo *v.* People, *supra.*

(4.) That when a juror has read in a newspaper the evidence taken in a former trial, and formed an opinion therefrom, in a case where the evidence is circumstantial, and where the testimony is likely to be repeated, and the juror would hear it with its result already lodged in his mind, " he ought not to be permitted to sit."   Greenfield *v.* People, 74 *N. Y.* 277, and the opinion of FINCH, J., in People *v.* Oyer and Terminer, 83 *N. Y.* 458, and of TALCOTT, J., in Manke *v.* People, 17 *Hun*, 411, referring to the Greenfield case.

(5.) That although a juror has read about a case in a newspaper, but has not a fixed and settled opinion, but has an impression based upon a certain fact or condition of facts if proved to be true, and with such an opinion he would be governed by the evidence and render a verdict accordingly, he may be allowed to sit, if the court, under the circumstances disclosed by him, after seeing and hearing the juror, is of the opinion that he is unbiased.   Abbott *v.* People, 86 *N. Y.* 467 ; opinion of MILLER, J.   See Manke *v.* People, *supra.*

Now, with these cases before us, we are called upon to review the conclusion of the court below, that the juror Snyder had not such a state of mind " in reference to the case of the defendant as to render him incapable of trying the issue im-

partially, and without prejudice to the substantial rights of the party challenging."

The juror was a farmer, residing in the town of Norway, some twenty miles away from Little Falls, where the murder occurred. He was fifty-eight years of age, and he read an account of it in the "*Journal and Courier*," published at Little Falls. When asked if he had read the evidence as published in that paper, or what purported to be the evidence, he answered, "I am rather inclined to think I did ; could not be positive." He had read the editorial comments, though he could recollect no " particulars about it." He said he formed an opinion, and it would take evidence to remove it, and he would not go into the jury-box with a mind free from prejudice, free from opinion ; and he said, " I don't know as I should require a great deal of preponderance of evidence on the part of the prisoner to remove my impressions, but I should require some." Later on in his testimony, he was asked, viz. : " If you were accepted as a juror in the case, and the oath administered to you, and you took your seat in the box, would you lay aside and leave any former impression you may have had upon the subject and receive the evidence and act impartially ?" His answer was, viz. : " That is what I would act upon wholly." Again, he was asked, viz. : " As a juror you would act entirely upon the evidence which was produced here upon the trial?" His answer was, viz. : " Yes, sir ;" and he added, he thought no information or impression which he had gained would influence him in any particular in his action as a juror. Some other statements appear in his evidence in respect to the impression made by reading the newspaper, and he stated that he understood that when he got in the jury-box he would be controlled by the evidence entirely. He was quite as well qualified as the juror Toplitz in People v. Oyer and Terminer, referred to in the opinion of FINCH, J., 83 *N. Y.* 457. Reading his evidence carefully through, as we find it in the appeal book, and bearing in mind the precedent to which we have referred, we cannot say that the trial court did not, in the exercise of a "sound discretion," come to a proper conclusion.

Giving that conclusion its proper influence upon us, coming as it does from a court that heard and saw the juror, we do not

see any feature of the evidence in the case which should lead us to differ with the trial court, and we cannot declare that the juror possessed any "actual bias" against the defendant or his case, after applying the rule laid down in section 376 of the Code of Criminal Procedure and the cases to which we have adverted. We may conclude what we have to say with the language of Judge MILLER, found at page 469 of 86 *N. Y.* in Abbott's case, where he says, viz. : "It was very evident that the alleged opinion was merely an impression which would not affect the juror in the conscientious discharge of his duty, and the court, under the circumstances, seeing the juror and his manner of testifying, were justified in holding that he was competent."

No other question arises upon the appeal book. We must affirm the conviction and judgment.

Judgment and conviction affirmed, and proceedings remitted to the Herkimer Oyer and Terminer.

SMITH, P. J., concurred.