THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.*
HENRY G. McGONEGAL, Appellant.

Upon a criminal trial the prosecution, under the provisions of the Code
of Criminal Procedure (§§ 385, 386), may reserve its right of peremptory
challenge to an individual juror until after the challenges on both sides
to such juror for actual bias have been disposed of; but it may be
required to exercise such right before it is known whether or not the
juror is satisfactory to the defendant.

Upon trial of an indictment for manslaughter, several jurors were chal-
lenged by defendant for actual bias.   After examination the court
overruled the challenges and declared the jurors competent, against the
exceptions of defendant.   The latter then secured the exclusion of some
of them by peremptory challenges, but, having exhausted these, three
of the said jurors were allowed to participate in the trial.   *Held*, that if
the challenge for bias was improperly overruled, the exclusion of a
juror upon a peremptory challenge would not affect the tenability of
defendant's exceptions; that he could not be compelled to use peremptory
challenges for such a purpose, but might reserve them for the rejection
of jurors against whom challenges for cause could not be successfully
maintained.

The jurors challenged for bias testified that they had read newspaper
reports of the proceedings before a coroner's jury, and had formed and
expressed opinions based upon information thus obtained as to the
guilt or innocence of the defendant, and that they had opinions which
would probably take testimony to remove.   All, however, testified
unequivocally to their ability to render an impartial verdict; that they
could accord to the accused the benefit of every reasonable doubt and of
the legal presumption of innocence if guilt was not clearly established,
and that their existing opinions or impressions would not affect their
verdict.   ·The challenges were overruled.   *Held*, that no reviewable
error was committed; that as under the provisions of the Code of
Criminal Procedure (§ 455) the right to review upon appeal is limited
to a decision of the trial court upon a matter of law by which the
substantial rights of the defendant are prejudiced, and as the dis-
allowance of the challenges was based upon some evidence to sustain it,
the decision was final and conclusive.

*Greenfield* v. *People* (74 N. Y. 277); *People* v. *McQuade* (110 id. 301),
distinguished.

One of the jurors challenged testified that he had a strong prejudice
against a person charged with such a crime, which would require over-
whelming evidence to remove, but his testimony showed that his preju-
dice was not personal to the prisoner, but against the crime itself, and
he declared that he knew nothing of the case and had no prejudice or

Statement of case.

opinion in it which would require evidence to remove, or would influence him, and asserted his ability to render an impartial verdict, uninfluenced by any prejudice, and that he could give defendant the full benefit of the legal presumption of innocence, until satisfied to the contrary beyond a reasonable doubt. *Held,* that the decision of the court overruling the challenge was not reviewable here.

The manslaughter charged was causing the death of a female by the use of instruments to produce an abortion. A material witness for the prosecution was a woman who had been an intimate companion and confidant of the deceased, knew of her pregnancy and her desire to obtain relief by prohibited means, went with her to defendant's house, and remained in another room at the time when it was alleged the operation was performed. It was not claimed the witness aided or advised defendant in any way, or was present when the crime charged was committed. *Held,* that she was not an accomplice of the defendant.

*It seems* the deceased herself was not an accomplice, but was guilty of a different crime (Penal Code, § 295), in the commission of which the witness may have been an accomplice.

(Argued October 19, 1892; decided November 29, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made December 31, 1891, which affirmed a judgment of the Court of General Sessions of the city and county of New York, convicting the defendant of the crime of manslaughter in the first degree.

The facts, so far as material, are stated in the opinion.

*W. T. Birdsall* for appellant. Every part of this case is reviewable on the appeal. (Code Crim. Pro. § 517.) The defendant is as fully entitled to the protection of the law as is the prosecution, and to greater protection, for the law seeks, and intends, to surround an accused person with every safeguard to avoid the possible conviction of an innocent person. (Code Crim. Pro. § 389.) The formation of the jury was in defiance of the rules of law, the provision of the Code of Criminal Procedure, and the settled decisions in this state. (Code Crim. Pro. §§ 376–385 ; *People* v. *McQuade,* 110 N. Y. 284; *People* v. *Casey,* 96 id. 117 ; *People* v. *Greenfield,* 74 id. 277; *People* v. *Mather,* 4 Wend. 229; *Hildreth* v.

*City of Troy*, 101 N. Y. 235.) The court erred in the charge to the jury which, taken as a whole, instructed the jury that the crime charged in the indictment had been proven, and was intended to and did create the impression upon the minds of the jury that there was no evidence to controvert the theory of the prosecution. (*People* v. *Downs*, 123 N. Y. 559.) The judgment is contrary to law; the defendant was not arraigned for judgment as the statute directs. (Code Crim. Pro. § 480.) Challenges to an individual juror must be taken first by the people and then by the defendant. (*People* v. *McQuade*, 110 N. Y. 292; Code Crim. Pro. §§ 376, 385.) It has been urged that because of the comments by Justice Andrews as to what these jurors had read, that the present jurors were not within the meaning of the *McQuade* case, because they had not read evidence of a judicial proceeding. This is untenable. (*People* v. *Willits*, 92 N. Y. 9; *People* v. *O'Neill*, 109 id. 251; *Hildreth* v. *City of Troy*, 101 id. 334.)

*Henry B. B. Stapler* for respondents. It is submitted that the evidence disclosed in the record in this case amply supports the verdict of the jury finding the defendant guilty of the crime of manslaughter in the first degree. (Pen. Code, § 191; *People* v. *Palmer*, 109 N. Y. 114; *People* v. *Cigarnale*, 110 id. 26, 27; *People* v. *Kelly*, 113 id. 647; *People* v. *Stone*, 117 id. 483; *People* v. *Trezza*, 125 id. 740; *People* v. *Bennett*, 49 id. 144; *Bradford* v. *People*, 20 Hun, 310.) Neither is the case of the people open to criticism on the ground that the testimony of the witness, Sadie Traphagan, required corroboration as that of an accomplice. (*Com.* v. *Drake*, 124 Mass. 21; Code Crim. Pro. § 399; *People* v. *Elliott*, 106 N. Y. 292.) The exceptions to the rulings of the trial court rendered in the formation of the jury, present no error to the attention of this court. (Code Crim. Pro. §§ 376, 377; *People* v. *McQuade*, 110 N. Y. 296; *People* v. *Wilson*, 109 id. 351.) No error was committed in allowing the people to interpose peremptory challenges after the people's challenges for bias had been withdrawn and the

challenge for bias interposed by the defendant withdrawn or overruled. (Code Crim. Pro. § 386; *People* v. *Carolin*, 115 N. Y. 658.)

MAYNARD, J. The defendant, a physician, was convicted at the New York General Sessions, of the crime of manslaughter in the first degree, for causing the death of a young unmarried woman by the felonious use of instruments in order to produce an abortion.

The first exceptions, deserving attention, relate to the disposition of the challenges of the parties to individual jurors. The prosecution was permitted to reserve its right of peremptory challenge in each case until after the challenges on both sides for actual bias had been disposed of; but was required to exercise such right, if it desired to do so, before it was known whether the juror was satisfactory to the defendant, and before he was sworn in the cause. We think this mode of procedure was authorized by the provisions of the Criminal Code. Section 385 requires challenges to an individual juror to be taken first by the people and then by the defendant. The next section prescribes the order, in which challenges by either party shall be made, and divides them into four classes; three for cause of different kinds, and the last peremptory. The two sections are to be read together, and they have the same meaning as if the legislature had declared that challenges must first be made by the people and then by the defendant in the order enumerated in section 386.

It is not a reasonable construction of these provisions, to require the people to go through the entire list of individual challenges and determine whether they will avail themselves of all of them, before the defendant can be required to make a challenge upon any ground. It is sufficient if the different classes are taken up seriatim, and in the order specified, and each party called upon to determine whether, as to that class, it is desired to interpose a challenge; the people first, and then the defendant. It satisfies the language of the statute, as well as its evident intention, and secures no unfair advant-

age to the prosecution.   In ordinary practice the challenges for cause may be grouped; as one examination will be sufficient to determine whether any tenable grounds exist for any of them, or the statements made upon an examination to determine one ground of challenge, may be considered by the court in determining a subsequent challenge upon a different ground, as was held in *Greenfield* v. *People* (74 N. Y. 277).

Several jurors were challenged by the defendant for actual bias, and, after examination, the challenges were overruled by the court and the. jurors declared competent to try the cause. So far as practicable, the defendant secured the exclusion of these jurors by the use of his peremptory challenges; but three, who were thus challenged without avail for actual bias, participated in the trial, because the defendant could not protect himself against their presence upon the jury by the interposition of a peremptory challenge.   But where the challenge for bias is improperly overruled the exclusion of the juror, upon a peremptory challenge, does not affect the tenability of the exception.   The defendant cannot be compelled to use his peremptory challenges for such a purpose, but should be permitted to reserve them for the rejection of unsatisfactory jurors against whom challenges for cause could not be successfully maintained.   (*People* v. *McQuade*, 110 N. Y. 301; *People* v. *Bodine*, 1 Denio, 308; *Freeman* v. *People*, 4 id. 31.)

These jurors had read the newspaper reports of the proceedings before the coroner's jury, and had formed and expressed an opinion, based upon the information thus obtained, as to the guilt or innocence of the defendant.   Two may be selected as fair types of this class, Messrs. Sayre and Miller, the former of whom was excluded by a peremptory challenge, and the latter participated in the trial.   The references here made will be to their statements upon the trial of challenges to them for actual bias.   While there may be some question as to the accuracy of the reports which they had read. we think it may fairly be assumed, for the purposes of this appeal, that they had read a verbatim account of all the testimony taken at the

coroner's inquest, and it was announced by the district attorney
at the beginning of the trial, and before any of the jurors were
called, that the testimony on the part of the prosecution would
be the same as that taken before the coroner, and it is to be
inferred from his statements that it was not expected that any
witnesses would be called by the people who had not there been
sworn and examined. It is insisted that these jurors were
incompetent to serve, under the decisions of this court in the
*People* v. *Greenfield* (*supra*), and the *People* v. *McQuade*
(*supra*); but we think these cases, when properly applied, do
not sustain the position of the defendant. On the contrary, it
was impliedly held in both cases that, upon the facts presented
by this record, no reviewable error was committed by the trial
court in overruling his challenges. In the *Greenfield* case,
which was a trial for murder, the obnoxious jurors had read
the report of a former trial of the accused, when the jury dis-
agreed, and had formed and expressed an opinion upon the
question of his guilt, which it would require evidence to
remove. This court held, as a question of fact, that it was
not satisfied that this opinion did not influence their verdict.
The case arose before the adoption of the Code of Criminal
Procedure, but after the enactment of chapter 475 of the Laws
of 1872, which changed the rule of the common law and pro-
vided that a juror who had formed or expressed an opinion
was, nevertheless, competent, if he declared on oath that he
verily believed that he could render an impartial verdict
according to the evidence, and that such previously formed or
expressed opinion would not bias' or influence his verdict, and
if the court was satisfied that such person did not have such a
present opinion as would influence his verdict. It was consid-
ered here, when chapter 473 of the Laws of 1873 was in force,
which required all challenges to be tried and determined by
the court only, and provided that either party might except to
the determination, and upon writ of error, or certiorari, it
might be reviewed the same as other questions on the trial.
The court very plainly intimate that where the juror makes
the declaration required by the act of 1872, the decision of the

court would be final and conclusive, were it not for the later statute, which authorizes the appellate court to review upon the facts as well as the law, and say at page 287 : " There does not appear to be any question of law involved in the present inquiry. There was no exception pressed upon us which was taken to the admission or rejection of evidence. The effect of the statute of 1872, in such a state of facts as this case shows, is that the fact of forming or expressing an opinion or impression, or of having either at the time of the challenge, is not, as matter of law, conclusive proof of bias or unindifference. So that there is here only the question of fact whether the two persons proposed, or either of them, had such a bias against the prisoner as to stand indifferent."

The act of 1872 has been literally incorporated into sub. 2 of section 376 of the Criminal Code, and the act of 1873, authorizing a review of the findings of fact of the trial court upon such a challenge was repealed when that code took effect, and the right to review in such cases is now controlled by section 455, and is limited to a decision of the trial court upon a matter of law, by which the substantial rights of the defendant are prejudiced, and not otherwise in allowing or disallowing a challenge to a juror for actual bias. It is thus apparent that if the question reviewed and decided in the *Greenfield* case had arisen after the adoption of the Criminal Code, this court would have been powerless to have overruled the decision of the trial judge, but would have been compelled to have accepted it as final and conclusive.

In the *McQuade* case the change in the practice was recognized, and it was held that the decision at the trial as to the indifferency of a juror was not reviewable here, except in the absence of sufficient evidence to support it, and cannot be reviewed, if the challenge is overruled, unless the evidence discloses a condition of mind on the part of the juror which, as matter of law, renders him incompetent for actual bias, after applying the test allowed by sub. 2 of section 376. It was also held that where it appeared that the juror had formed or expressed an opinion from a careful perusal of the testi--

mony given on a former trial, the declaration required of the juror to avoid the objection of disqualification must be certain and unequivocal; and it is not enough that there are detached statements which, if alone considered, would seem to meet the statutory requirement, if, on construing the whole statement, it is apparent the juror is not able to express an absolute belief that his opinion will not influence his verdict, and that, as matter of law, the overruling of the challenge under such circumstances, was error. The juror there stated, that if the evidence was the same as that given on the former trial, his opinion would be the same, but he thought his present opinion would not affect the weight or influence that he might give to the evidence as delivered from the witness stand; he might be unconsciously influenced; he did not know; he thought it would not influence; if the evidence as given on the trial left his mind in doubt his present opinion might influence or guide his action; he really could not say what effect it would have; he was in doubt as to what effect it would have. These were the statements of the juror upon his examination, and while he gave favorable answers to the categorical questions required by the statute, it was evident he did not have a conviction, which amounted to a belief; that his present opinion would not influence his verdict, and that he could render an impartial verdict according to the evidence. There was, therefore, no sufficient basis for the finding that he had such a belief or that his opinion would not affect his verdict.

The present record does not disclose any such uncertainty as to the mental state of the jurors objected to. We fail to find anywhere in their examination an expression of doubt or equivocation on their part as to their ability to render an impartial verdict according to the evidence, notwithstanding their present opinion, or as to their belief that such opinion would not influence their verdict. Whenever their attention is called to the point they declare themselves freely and without hesitation to be firmly convinced that they can enter the jury box and accord to the accused the benefit of every

reasonable doubt, and of the legal presumption of innocence until guilt is clearly established, and that their existing opinions or impressions will not be an element entering into the formation of the verdict they shall render.

Within the rule laid down both in the *Greenfield* and in the *McQuade* case, their competency became a question of fact, and the decision of it at the trial cannot be disturbed upon this appeal.

The statute makes no discrimination between opinions formed from the reading of the testimony upon a former trial and those based upon information gathered from other authentic sources. Upon this point nothing was decided in *Greenfield* v. *People*, except that where in a capital case, which had been once tried and had resulted in a disagreement of the jury, it appeared that the juror had read the testimony wholly or in part, given upon the former trial and had a present opinion derived therefrom as to the guilt of the prisoner this court was not satisfied that his opinion would not influence his verdict, although he made the statutory declaration without qualification. That case merely embodied the deliberate judgment of this court in regard to the proper conclusion of fact to be drawn from the testimony in a given case at a time when it had power to review the facts. As such, it will, undoubtedly, receive the consideration and respect to which it is entitled at the hands of trial courts, where precisely the same state of facts is presented for their decision. It is not authority for the claim that as matter of law, the juror is disqualified under such circumstances, but expressly declares that it is purely a question of fact. In determining the fact of indifference there is, however, a wide distinction to be noted between an opinion based upon the testimony given on a former trial, and one formed after reading the proceedings upon the inquisition of a coroner. In the latter case the accused is not on trial. It is an *ex parte* inquiry as to the immediate cause of death and the agency which produced it. The suspected criminal is not represented by counsel; the witnesses are not subjected to the test of a cross-exam-

ination, and no defense is permissible. An opinion or impression formed from a perusal of the report of such a proceeding does not present the same obstacle to an impartial judgment upon the evidence to be given upon the trial of the defendant, as one resulting from an examination of the minutes of a trial where the defense has been fully heard. The fair presumption is that the oral deliverance of the testimony given upon a former trial will have the same effect as its perusal upon the mind of the juror, and it will ordinarily be difficult for him to freely make the statutory declaration, and if he qualifies it with a doubt or an expression of distrust in his ability to act without bias, the statute is not satisfied and he is disqualified. But an opinion based upon a newspaper account of a coroner's examination will properly have much less weight in determining the question of indifference. While its existence or the existence of any opinion founded upon reliable information will undoubtedly lead to the exercise of great care by the trial court in determining the competency of the juror, it is no longer, as matter of law, an absolute disqualification.

The personal appearance and demeanor of the juror and the intelligence exhibited by him upon his examination are important factors in reaching a just conclusion in all such cases. They evidently had their due weight in the present case for the court, in overruling the challenge to the juror, Sayre, said: " I have examined this juror and have taken into consideration his mental condition. He is a man of intelligence and, apparently, of a disposition to do his duty. I think he is a qualified juror," and in regard to the juror Miller the record states: " The court after seeing the juror and hearing his examination, and, in the light of all the statements of the juror as regards his condition of mind, holds him to be a competent juror and overrules the challenge."

These aids to a correct judgment are not available upon appeal. The trial court has the best means of testing the qualifications of the juror, and, unless there is a failure to meet the statutory requirements, its decision must be held to be conclusive here. Great stress is placed by counsel upon the state-

ment of jurors that they had an opinion which they would take with them into the jury box, and which it would probably require evidence to remove. That would necessarily be the condition of their minds if they had any opinion at all. It is not conceivable that when sworn as jurors they could lay it aside as they would a garment, which it was no longer convenient or appropriate for them to wear. The statute presupposes such a mental condition. It proceeds upon the reasonable theory that the existence of an opinion as to the subject of the investigation is not inconsistent with the attitude of an impartial seeker after truth. It recognizes, what intelligent observation confirms, that it is safer to trust the man who keeps himself fully informed as to the current events of the community in which he lives, and has views and opinions of his own with respect to their import, than it is to rely upon the judgment of one who takes no interest in such matters, or does not have sufficient intellectual activity or vigor to form an opinion in regard to them when they are brought to his attention.

The challenge to the juror Hass rested upon different grounds. He, in terms, stated that he had a strong prejudice against a person charged with such a crime; a prejudice so strong that it would take overwhelming evidence to remove it. If the prejudice was a personal one, having for its object the defendant in this case, it must be conceded that he was, as matter of law, incompetent. A finding that he was indifferent would have no sufficient evidence to support it. His case was not within the purview of the act of 1872, and the statutory declaration would not be available to remove the disqualification. But we think his evidence, fairly construed, does not indicate such a state of mind towards the defendant. His prejudice was an impersonal one directed against the crime itself and every one guilty of committing it. It was such a feeling as every right-minded citizen would naturally entertain without disqualifying him for jury service in a case where it was charged that the crime had been committed. He stated that he did not know anything about the case; had no preju-

dice or opinion in the case which would require evidence to remove; what prejudice he had was against the accusation; he did not think that he had any such prejudice as would influence him in the performance of his duty in the case; was certain that he had not; outside of any prejudice he had in relation to matters of this kind in general, if he was accepted as a juror, he could discharge his duty under oath and decide the case upon the evidence, and that alone, entirely uninfluenced by any prejudice, or in relation to any matter; he had no prejudice or opinion in this case whatever, that would take evidence to remove, of any kind or character; if accepted as a juror, he could give the defendant the full benefit of the legal presumption of innocence, until he was satisfied to the contrary beyond a reasonable doubt. It will thus be seen that he positively avows that he has no prejudice against the defendant or his case. Viewed in the most favorable light for the defendant, his examination presented only a question of fact as to his competency, the decision of which we cannot review.

Upon a prosecution for a violation of the lottery laws, it was held that a juror was not disqualified because he had a prejudice against the business and those who were engaged in it, and was in favor of active measures for its suppression, inasmuch as he also testified that he had heard, read and talked nothing about the particular prosecution, and felt that he could decide the case without prejudice from the evidence. (*U. S.* v. *Noelke,* 17 Blatchf. 554; *State* v. *Burns,* 85 Mo. 47; *Young* v. *Bridges,* 34 La. An. 333.)

It was also held by this court in *People* v. *Carpenter* (102 N. Y. 238), that a prejudice against the defense of insanity did not disqualify a juror in a case where the defense was interposed.

It is urged that the evidence was insufficient to sustain a finding that death was caused by unlawful means, or, if so caused, that they were applied by the defendant, and that a verdict of acquittal should have been directed. A careful analysis of the testimony given upon the trial has led us to a

contrary conclusion. The results of the autopsy, if the medical testimony is worthy of belief, very clearly established that death was due to peritonitis following a lesion of the wounded parts, and that the certificate of death, signed by the defendant, falsely ascribed it to inflammatory rheumatism of the heart. As the deceased was the only person, other than the criminal, who was present when the unlawful act was committed, the evidence tending to connect the defendant with the perpetration of the offense was necessarily circumstantial.

The jury have found that it was entitled to full credence, and we must be confined to a consideration of its legal effect, assuming it to be strictly true. We do not deem it profitable, for the purposes of this review, to recount the details of a most revolting crime. It is sufficient to state that, from the time it is shown that the deceased had her first interview with the defendant until the removal of her dead body by him in the night time, ten days later, from a tenement-house to the undertaker's for burial, every fact proven pointed with more or less directness to him as the primary agency in causing her death. If innocent, it was his misfortune to voluntarily environ himself in a network of circumstances which, to the minds of intelligent men required to reach results by rational processes, would admit of no other conclusion than that of guilt. Even applying the rigorous rule insisted upon by defendant's counsel, that the facts must be of such a character that they cannot be accounted for upon any other hypothesis than that of the criminality of the accused, and must demonstrate to a moral certainty that a crime has been committed, and that he was its author, we think the verdict in this case is impregnable. The defendant's conduct must be here construed and judged by the standards ordinarily applied in determining the significance of human actions. If we correctly apprehend the earnest and impassioned argument of counsel, it was claimed that the defendant's simplicity of character was such that the same inferences could not be justly drawn from his acts and conversation as might properly be deduced from those of other people acting under similar circumstances. It was for the jury to

determine how far this might be true, and what weight it should have in making up their verdict. It is not a consideration which can affect the decision of this appeal.

It is also insisted that there was a lack of opportunity to commit the crime, and that the people's case was fatally defective in this respect. It appears that on July 2, 1890, the day when it is charged the crime was committed, the defendant and the deceased were alone together in his office for a length of time not exceeding five minutes in duration, which, it is claimed, was not long enough to obtain the necessary information from a stranger, and successfully perform the required operation. It was shown by the expert testimony that this period of time might have been sufficient for such purpose; but whatever force this criticism would otherwise be entitled to, it is deprived of its principal effect by the evidence of the defendant himself. He testified that he had met the deceased previously to July second, and the jury were at liberty to infer that the meeting on that day was pre-arranged, or they may have found that the criminal act was committed at a former meeting, as he also testified that on July second, she was then complaining of the pains which are usually regarded as the premonitions of a miscarriage. The most important witness for the prosecution was a young woman, who had been an intimate companion and the confidant of the deceased, who knew of her pregnancy and of her desire to obtain relief by prohibited means, and who accompanied her to the defendant's house upon July 2, and remained in the front, or reception room, while the deceased and the defendant were in a back, or office room, and who aided the deceased in engaging apartments for use during her expected sickness. It is sought to fasten upon this witness the character of an accomplice of the parties engaged in the commission of the crime charged in the indictment, and thus detract from the weight of her evidence. It is not claimed that she aided or even advised the defendant in his criminal undertaking, or was present when it was consummated. Even the deceased was not an accomplice of the defendant in the commission of the crime of abortion, and, if

she had lived, could not have been indicted for that offense. It was so held by this court in *People* v. *Vedder* (98 N. Y. 630). Her crime was of a different nature, and is defined in section 295 of the Penal Code. The witness may have been an accomplice of the deceased in the commission of that offense, and her association with the deceased, and moral implication in her criminal conduct, were matters which could not have escaped the attention of the jury, for it is not probable that the learned and vigilant counsel failed to make them the subject of proper comment in their plea for the defense. There was no request for a specific instruction upon this point, and there is no exception which presents any question with respect to it for our consideration.

There were many exceptions taken upon the trial to the admission and rejection of evidence. We have examined them all and do not find any error which affected the substantial rights of the accused. Many of them are clearly untenable, while others relate to the order of proof or to the exclusion of testimony subsequently admitted, and which could not have prejudiced the defendant. The defendant's counsel seem to have been allowed great latitude in the examination and cross-examination of witnesses, and our attention has not been called to any incompetent evidence received against their objection, or to any competent evidence offered by them which was finally excluded.

The charge of the judge fairly presented the rules of law applicable in such cases, and all of the defendant's requests were substantially charged, except such as were equivalent to a direction to acquit, or related to matters which had already been fully charged. The review of the evidence was impartial and apparently accurate, with the exception of the misquotation of a remark made by Mrs. Collins to the defendant, when he first called on the deceased at her house, and which, as recited by the trial judge, conveyed a different meaning from the statement given in evidence. It was, unquestionably, an unintentional misstatement, which would have been corrected, if the attention of the court had been called to it in

season, and there is no exception which renders it available here.

We can not review the discretion of the trial court as to the measure of punishment inflicted, so long as it did not transgress the limits prescribed by the Penal Code. It may be equivalent to a life sentence, but we can not say that it is more than sufficient to atone for the flagrant crime of which the defendant has been adjudged guilty.

The judgment of conviction must be affirmed.

All concur.

Judgment affirmed.