The People of the State of New York, Respondent, *v.* Charles
Flaherty, Appellant.

*Sexual intercourse with a female under sixteen — review of challenges for actual
bias — admissibility of proof of other acts of intercourse — compelling the prosecu-
tion to elect as to which one of several offenses it will rely upon — relevancy of the
birth of a child — alteration of the date of the birth of the female in a parish
register — attempt to gain possession of the female by a forged letter — when the
whole of a conversation may be required — the period of gestation as affecting the
female's testimony that intercourse took place on a day named.*

Under sections 376 and 455 of the Code of Criminal Procedure the action of the
trial court, before which an indictment is being tried, in overruling a chal-
lenge to a juror, will not be reversed on appeal unless the evidence discloses
such a condition of the juror's mind as renders him incompetent, as matter of
law, because of actual bias.

A juror who testifies that he has formed an opinion as to the guilt or innocence
of the accused, which it would require evidence to displace, but that sufficient
evidence would change his mind, and that he can divest himself of any opinion
entertained by him and can render an impartial verdict on the evidence, may
properly be permitted to serve.

A juror who has read a brief account of the case in a newspaper, and an account
of the preliminaries of the trial, but none of the testimony, in a pamphlet, and
whose opinion as to the question of the guilt or innocence of the accused, a
priest, is based mainly upon the ground that the accused has been suspended
or removed from the priesthood by his bishop, is competent to serve where he
testifies that, notwithstanding his impressions, he can render a fair and impar-
tial verdict on the evidence.

Upon the trial of an indictment charging the defendant with the crime of having
sexual intercourse with a female under sixteen years of age, the prosecution
may prove acts of intercourse occurring between March 2, 1892, and July 4,
1892, the date when the female became sixteen years of age — the district
attorney when he rests electing to stand on an act of intercourse committed
May 28, 1892.

The exercise of the discretion resting in the trial court, as to the time when it
will require the People to elect which of several criminal acts testified to they
will rely upon for a conviction, will not be disturbed unless the discretion
has been unreasonably exercised or manifest injustice has been done to the
defendant.

Proof that the female gave birth to a fully-developed child on March 16, 1893,
which was about eight months after the female became sixteen years of age, is
relevant, as showing that some one had had sexual intercourse with her before
she became sixteen years of age, although it does not prove that the defendant
was the person.

An alteration of the date of the birth of the female contained in a parish register, to which the defendant had access, in such a manner as to make it appear that the female was upwards of sixteen years when the first act of intercourse took place, is, if found by the jury to have been the act of the accused, a corroborative fact.

Proof that the defendant attempted, about six weeks before the confinement of the female, to take her from the people with whom she was staying by means of a fictitious letter, purporting to be from a priest in charge of a convent where the female had formerly resided, is competent as showing an intent upon the part of the defendant to obtain possession of the female by deceit.

Where the defense upon the cross-examination of a witness for the prosecution calls out part of a conversation in which the female disclosed to the witness the fact that she was pregnant, the prosecution is, upon the redirect examination, entitled to call out the remainder of the conversation, to the effect that the female said that the defendant could not harm any one; that he was a good man, a pure man, and that he could not harm her, and that the defendant had taught her that.

Where the female has testified to two acts of intercourse which occurred in June, 1892, and within 280 days of the birth of the child, that being the ordinary period of gestation, the fact that her child was born 292 days after May 28, 1892, the date of the intercourse which the prosecution elected to rest upon, does not discredit her testimony that intercourse occurred on that date.

APPEAL by the defendant, Charles Flaherty, from a judgment of the Court of Sessions of the county of Livingston in favor of the plaintiff, entered in the office of the clerk of the county of Livingston on the 9th day of October, 1895, upon the verdict of a jury convicting the defendant of an "act of sexual intercourse with a female under the age of sixteen years, not his wife," pursuant to which he was sentenced to imprisonment in the State prison at Auburn for seven years.

*George Raines,* for the appellant.

*William Carter* and *Charles H. Rowe, District Attorney,* for the respondent.

FOLLETT, J.:

At the time of the transactions out of which this action arose, the Penal Code provided:

"§ 278. Rape is an act of sexual intercourse with a female not the wife of the perpetrator, committed against her will or without her consent. A person perpetrating such an act or an act of sexual intercourse with a female not his wife,

" (1) When the female is under the age of sixteen years; * * *

" (6) When she is at the time unconscious of the nature of the act, and this is known to the defendant,

" is punishable by imprisonment for not less than five nor more than twenty years."

February 6, 1893, an indictment was found at a Court of Oyer and Terminer charging the defendant with the violation of the 1st and 6th subdivisions of the section above quoted. By the first count he was charged with having sexual intercourse at the town of Mount Morris on the 1st day of July, 1892, with Mary Sweeney, a female under sixteen years of age and not his wife. By the second count he was charged with having sexual intercourse with Mary Sweeney, a female under the age of sixteen years and not his wife, she being at the time unconscious of the nature of the act, which was known to the defendant. The evidence was not of a character to justify a conviction under the second count, which count requires no consideration.

February 9, 1893, the indictment was sent to the Court of Sessions for trial. April 17, 1893, the defendant was arraigned, and interposed a demurrer upon the ground that a crime was not charged in the indictment, which was overruled, and thereupon the defendant pleaded not guilty, and at the same term was tried and convicted. An appeal was taken to the General Term, which held that the indictment was sufficient, but reversed the judgment on the ground that the court erred in not permitting the defendant to show that other persons had sexual intercourse with Mary Sweeney in June, 1892 (79 Hun, 48), which judgment was affirmed on the opinion delivered at General Term (145 N. Y. 597).

At the Court of Sessions held in September, 1895, the defendant was again convicted on the first count, and was sentenced October 9, 1895, to imprisonment in the State prison at Auburn for seven years. On the same day he appealed from the judgment, and a certificate of reasonable doubt was granted, and the defendant admitted to bail pending the appeal.

The defendant urges nine grounds of error, any one of which he insists requires a reversal of the judgment and a new trial :

(1) That the court erred in overruling the defendant's challenge to Henry Ford, a juror called, for actual bias.

. (2) That the court erred in overruling the defendant's challenge to George H. Snyder, a juror, for actual bias.

(3) That the court erred in denying defendant's motion, at the opening of the trial, that the district attorney be required to specify which of the eight acts described in his opening was the one charged in the indictment and relied on, and that the court erred in denying defendant's motion to the same effect at the close of the direct examination of Mary Sweeney.

(4) That the court erred in denying the defendant's motion that the judgment be arrested on the ground of variance between the indictment and the evidence as to the date when the alleged crime was committed.

(5) That the court erred in permitting the jury to determine whether the birth of the child was corroborative of the commission of the act of intercourse of May 28, 1892.

(6) That the court erred in permitting the jury to consider the alteration of the record of birth of Mary Sweeney as a possible guilty act of the defendant.

(7) That the court erred in submitting to the jury the question whether the fictitious letter, which the defendant asserted he had received from Father English, was a fact tending to establish the guilt of the defendant.

(8) That the court erred in permitting Jennie Skillen to testify to the reasons given by Mary Sweeney, nine months after the alleged intercourse, for permitting it.

(9) That the court erred in denying defendant's motion, made at the close of the evidence, that the jury be advised to acquit the defendant on the ground that the crime charged had not been proved, and also his motion for a new trial made after the verdict, on the ground that it was contrary to law and against the evidence.

The first and second questions relating to the challenges to the two jurors may be conveniently considered together, and, in considering these exceptions, it is well to have in mind the provisions of sections 376 and 455 of the Code of Criminal Procedure, which was enacted in 1881, and took effect September first of that year. These sections have never been amended, and provide:

"§ 376. Particular causes of challenge are of two kinds:    *    *    *

"For the existence of a state of mind on the part of the juror, in reference to the case, or to either party, which satisfies the court, in the exercise of a sound discretion, that such juror cannot try the issue impartially and without prejudice to the substantial rights of the party challenging, and which is known in this Code as actual bias. But the previous expression or formation of an opinion or impression in reference to the guilt or innocence of the defendant, or a present opinion or impression in reference thereto, is not a sufficient ground of challenge for actual bias, to any person otherwise legally qualified, if he declare, on oath, that he believes that such opinion or impression will not influence his verdict, and that he can render an impartial verdict according to the evidence, and the court is satisfied that he does not entertain such a present opinion or impression as would influence his verdict."

"§ 455. On the trial of an indictment exceptions may be taken by the defendant to a decision of the court, upon a matter of law, by which his substantial rights are prejudiced and not otherwise, in any of the following cases: *    *    *

"2. In admitting or rejecting testimony on the trial of a challenge for actual bias to any juror who participated in the verdict, or in allowing or disallowing such challenge."

Under these sections it has been held that the decision of the trial court, on the question of indifferency of a juror, is not reviewable, except in the absence of any evidence to support it, and so, where the challenge is overruled, the decision may not be reviewed unless the evidence discloses a condition of mind on the part of the juror, which, as matter of law, renders him incompetent for actual bias. (*People* v. *McQuade*, 110 N. Y. 284; *People* v. *McGonegal*, 136 id. 62.)

In *Greenfield* v. *People* (74 N. Y. 277) the determination of the trial court of the question of fact was reviewed by virtue of chapter 427 of the Laws of 1873, which act was expressly repealed by chapter 593 of the Laws of 1886, and the rule laid down in that case, as to the power of appellate courts to review the determination of a trial court on the facts, has been abrogated.

It has been repeatedly held, under sections 376 and 455 of the Code of Criminal Procedure, that in case the challenged juror testifies that he believes that, notwithstanding the opinion he has

formed, such opinion or impression will not influence his verdict, and that he can render an impartial verdict, it is not error to receive him as a juror. (*People* v. *Cornetti*, 92 N. Y. 85; *People* v. *Carpenter*, 102 id. 238; *People* v. *McGonegal*, 136 id. 62.) In the case last cited many of the previous cases are reviewed, and it was held that, under the Code of Criminal Procedure, the determination of the qualifications of a juror under this section was a question of fact for the trial court, not reviewable as a question of fact, and it was there said that the " Personal appearance and demeanor of the juror, and the intelligence exhibited by him upon his examination, are important factors in reaching a just conclusion in all such cases. * * * These aids to a correct judgment are not available upon appeal. The trial court has the best means of testing the qualifications of the juror, and, unless there is a failure to meet the statutory requirements, its decision must be held to be conclusive here."

Henry Ford testified that, from what he heard and read, he had formed an opinion of the guilt or innocence of the defendant, and had that opinion at the time he was sworn, which would require evidence to displace, but that sufficient evidence would change his mind. He testified that if he went into the jury box he thought he could render an impartial verdict upon the evidence in the case. He testified : " My state of mind is, a man called upon as a juror should go according to the evidence — form his opinion by the evidence. The thing for him to do is to drop his opinion and listen to the evidence before him. There is nothing in my mind so well settled that I could not change it if I heard the evidence. If sufficient evidence is brought I am ready to re-examine anything I ever thought or knew, and change it upon evidence against it."

And in answer to a question put by the court, he testified that he could divest himself of any opinion then entertained, and render a fair and impartial verdict upon the evidence. This juror was held to be competent, and the defendant's counsel excepted and then challenged him peremptorily, which exhausted the peremptory challenges of the defendant. The juror complied with the statutory requirements, and there is nothing in the evidence given upon his examination which tends to show that he was hostile to the defendant, or had formed such an opinion as would render him incompetent to sit as a juror. It did not appear that he had ever read the

.evidence taken upon the former trial, or that he had ever discussed, the guilt or innocence of the defendant with any person who believed him guilty.    The case was one of great public interest, and had been once tried, and more or less information in respect to the trial had undoubtedly appeared in the local papers, but the impression formed by an intelligent man, with a strong mind, from such information, does not disqualify him from acting as a juror.    Indeed the statute was passed to enable such persons to act as jurors.

George H. Snyder was challenged for bias by the defendant, and the challenge was overruled and an exception taken, and he was accepted as a juror.    This juror was clearly qualified.    He had never read the evidence in the case, but had read a brief account of it in a Buffalo paper, which did not give the history of the case or the testimony.    On another occasion he had read two pages of a pamphlet relating to the case, but none of the evidence.    He testified that the only part of the book which he read was that which gave an account of the preliminaries of the trial, the drawing of the jury, etc., and that he had read none of the testimony.    It does not appear that he had discussed the question of the guilt or innocence of the defendant with any person ; and the only opinion which he had formed was mainly because the defendant had been suspended or removed from the priesthood by the bishop.    He testified most emphatically that, notwithstanding his impressions, he could render a fair and impartial verdict upon the evidence, and there is nothing in his examination which raises the slightest presumption that he was not a fair-minded man, in every respect qualified to discharge the duties of a juror in this case.    In my opinion the learned trial court did not err in overruling the defendant's challenges to these two jurors.

As already appears, this case had been tried before, and Mary Sweeney testified on that trial, as on this, that the defendant had intercourse with her on eight different occasions between March 2, 1892, and July 4, 1892.    At the opening of the present trial, the defendant's counsel asked the court to compel the People to elect upon which act he would rely as the one charged in the indictment, which was refused, and the defendant excepted, and at the close of the direct examination of Mary Sweeney the same motion and decision were made, and the defendant again excepted.    When the People rested the defendant's counsel renewed his motion, and the

·court required the People to elect, and thereupon the district attorney elected to stand on the act of May 28, 1892.

Before discussing the question whether the court erred in not requiring the People to elect which act they would claim a con-viction on before resting, it will be well to determine whether the People should have been confined to proof of a single act of sexual intercourse — the one relied on for the conviction — or whether it was competent for them to prove seven other acts occurring between March 2, 1892, and July 4, 1892, when the girl became sixteen years of age. The notion which formerly existed that in criminal trials evidence which discloses a crime committed by the defendant other than the one for which he is on trial, is inadmissible, because it shows that he has committed another crime, is exploded, provided the evidence is admissible on general grounds. (Whart. Cr. Ev. [8th ed.] § 30 *et seq.* ; Roscoe Dig. Cr. Ev. [9th ed.] 92 and cases cited.)

In *People* v. *O'Sullivan* (5 N. Y. St. Repr. 132; affd., 104 N. Y. 481) the defendant was tried upon an indictment charging him with rape in the first degree, and it was held by the justice who wrote the prevailing opinion in the General Term that on such a trial it was incompetent to prove that the defendant four days before the offense charged attempted to commit the same offense upon the com-plainant. The other two justices are reported as concurring in the result. In fact, one justice concurred in the result, and the other, as appears by the record in the Court of Appeals, wrote as follows: "The defendant is entitled to a new trial upon the charge, but not for the admission of evidence of his treatment of the plaintiff four days prior to the alleged ravishment. Evidence of intention, or of a prior attempt to commit this crime, was competent. (Whart. Cr. Ev. § 49.)"

The judgment was reviewed by the Court of Appeals, and it was there held, all the judges concurring, that it was competent to give evidence of a previous attempt by the defendant to commit the same offense on the complainant, although it involved the proof of another felony. The judgment of the General Term was sustained on the ground that the court erred in receiving in evidence the complaint of the female made for the first time more than ten months after the commission of the offense. Many cases are cited

in the opinion in support of the doctrine that in such a case previous similar acts, though felonies, are relevant facts.

In *People* v. *Grauer* (12 App. Div. 464) the defendant was tried upon an indictment charging him with one act of sexual intercourse, committed October 15, 1895, with a female under the age of eighteen years, who was not his wife. The girl testified that the act was committed October 15, 1895. The defendant was sworn as a witness and denied it. (In the case at bar the defendant did not offer himself as a witness.) The girl testified that for two years before the act charged in the indictment, the defendant had from time to time had sexual connection with her. The fact that connections earlier than the one alleged had occurred was corroborated by other witnesses. It was held that notwithstanding the previous acts were felonies, they were relevant facts, and that the corroboration of those acts might be received as corroborative of the act alleged in the indictment.

In *Regina* v. *Rearden* (4 Fost. & F. 76) the defendant was indicted for carnally knowing a female child under the age of ten years on a day specified, and it was held that evidence of their intercourse after the date mentioned in the indictment was relevant on the ground that all the acts were part of one continuous transaction.

In Massachusetts it is provided that whoever commits adultery shall be punished by imprisonment in the State prison not exceeding three years or in a jail not exceeding two years. (Mass. Pub. Stat. [ed. of 1882] 1165, § 3.) In *Commonwealth* v. *Nichols* (114 Mass. 285) the indictment charged that the defendant committed adultery June 25, 1872, in the county of Middlesex. The defendant testified in his own behalf, and was asked: " Did you within a few weeks either way have criminal intercourse with Miss Morris anywhere ? " He declined to answer on the ground that his answer would tend to criminate him, and that proceedings had been begun against him for adultery with the same person in another county, and that he was not bound to furnish evidence against himself. The court required him to answer, and he said, " I did."

In considering the question as to the relevancy of other acts of intercourse, the court said : " Acts of adultery between the defendant and the same woman, near the time of the adultery for which

he was indicted in this case, though committed in another place, were competent to be proved in support of this indictment."

Wharton states the rule thus: " In prosecutions for adultery or for illicit intercourse of any class evidence, is admissible of sexual acts between the same parties prior to, or, when indicating continuousness of illicit relations, even subsequent to the act specifically under trial. Prior sexual attempts on the same woman are admissible, under the same limitations, on a trial of rape." (Whart. Cr. Ev. [8th ed.] §§ 35, 46 ; 3 Russ. on Crimes [5th ed.], 382 ; 1 Taylor Ev. [Chamberlayne's ed.] 257[6] and cases cited.)

In *State* v. *Markins* (95 Ind. 464) it was said : " The general rule undoubtedly is, that one crime cannot be proved in order to establish another independent crime, but this rule does not apply to cases where the chief element of the offense consists in illicit intercourse between the sexes."

On the trial of an indictment charging a person with the offense charged in this indictment, it is always important to show that the persons associated together, and also to show the exact relations which existed between them, and the fact that in developing those relations other acts of intercourse are established is not error. In trials, civil and criminal, involving the question whether the relations of persons were meretricious, the fact that they frequently met and sought opportunities for meeting, and what they did when they met, has been generally held competent by the courts on the ground that it showed the disposition of the parties and was evidence in corroboration of the particular charge.

All the acts of intercourse related to different times before the girl became sixteen years of age and not to any act after she became sixteen years of age.

In case illicit relations between two persons are established, such relations are presumed to continue if they have access to each other. (Best on Ev. [5th Eng. ed.] § 405 ; *Caujolle* v. *Ferrié*, 23 N. Y. 90 ; 1 Taylor Ev. [Chamberlayne's ed.] 183[32], 257[6].)

Did the court err in refusing to compel the People to elect until after they had rested ? In this State whether the People shall be required to elect rests largely in the discretion of the trial court. (*People* v. *Baker*, 3 Hill, 159 ; *People* v. *Austin*, 1 Park. Cr. Rep. 154 ; *Nelson* v. *People*, 23 N. Y. 293, 297 ; *People* v. *Wright*, 136

id. 625, 631; 1 Bish. Cr. Proc. [1st ed.] § 205; 1 Bish. Cr. L. [8th ed.] § 791; Whart. Cr. Pl. & Pr. [8th ed.] § 295; 1 Archb. Cr. Pl. [Waterman's ed.] 310 *et seq. ;* Heard Cr. Pl. 248; 6 Am. & Eng. Ency. of Law, 250; 1 Taylor Ev. [6th ed.] § 313; [8th ed.] § 334; [Chamberlayne's 9th ed.] § 329 *et seq.*)

When the People shall be required to elect is within the discretion of the trial court, which will not be interfered with on appeal unless the discretion was unreasonably exercised and manifest injustice done to the defendant. This action had been in effect twice tried before the trial now under review, once in bastardy proceedings taken against the defendant, and the first trial on this indictment. The girl had been examined, cross-examined and re-examined on the previous trials, at great length, and the defendant and his counsel knew precisely when the eight acts of intercourse occurred, as testified to by the girl, the circumstances under which they were committed, and defendant was neither surprised nor injured by the trial court postponing its decision in respect to election until the People rested.

The court committed no error in denying defendant's motion to arrest the judgment on the ground of variance between the date of the crime, as alleged in the indictment, and the date of the offense which the People elected to ask a conviction for.

Section 280 of the Code of Criminal Procedure provides:

"§ 280. The precise time at which the crime was committed need not be stated in the indictment, but it may be alleged to have been committed at any time before the finding thereof, except where the time is a material ingredient in the crime."

Time is not a material ingredient of the felony charged, except that the act charged as a crime must have been committed before the girl became sixteen years of age. This the indictment did, and under it continuous acts of sexual intercourse committed by the defendant with her, within four months before she became sixteen years of age, could be proved, and the People had the right to elect to rely on any one of them as a ground for conviction.

The court did not err in submitting to the jury the question of the probative force of the fact that the girl gave birth to a fully-developed child March 16, 1893.

It was conceded that the girl was born July 4, 1876, and became sixteen years of age July 4, 1892. It was proved without objection that March 16, 1893, she gave birth to a fully-developed child. Upon reviewing the first trial the General Term held (79 Hun, 48; affd., 145 N. Y. 597) that the birth of the child was a relevant fact. Such it clearly was, because the date of the birth established the fact that a felony had been committed, that some one had had sexual intercourse with the girl before she became sixteen years of age, though it did not prove that the defendant was the person. On the trial of an indictment it is always competent to first prove that the crime charged has been committed, by evidence which does not connect the defendant with the crime. After it is established that a crime has been committed then the defendant's commission thereof must be shown. In *Commonwealth* v. *O'Connor* (107 Mass. 219) the defendant was tried on an indictment charging him with having committed adultery with an unmarried female, and it was held that the birth of a child which might have been begotten at about the date of the offense charged was not a relevant fact. In that case the birth of the child did not establish that the crime charged in the indictment — adultery — had been committed, for the child might have been the result of intercourse by the woman with an unmarried man — fornication — a different offense under the statutes of Massachusetts, and punishable by imprisonment in a jail and not in a State prison.

The court in the case at bar expressly instructed the jury that " the fact that the child was born is no evidence corroborating the claim of the People that this defendant is the guilty man. You must look to other sources for corroboration on that point." The only effect given to the fact that the girl had given birth to a child was that it established that a crime had been committed by some one, and the court committed no error in submitting this fact to the jury.

As before stated, it was conceded on the trial that Mary Sweeney was born July 4, 1876, and it was testified that she was born in the town of Farmington, New York, of which parish Father Hughes was, at the time, the priest, but he was dead at the time of the trial. It was shown that he kept a register of births and baptisms, in which it was entered in his own hand that Mary Sweeney was born July 4, 1876. It was also shown by undisputed evidence that after the

scandal became public, the defendant saw this register, knew where it was kept, and had access to it.    The register was produced, and it appeared that the date of the birth of the girl had been changed from July 4, 1876, to January 4, 1876.    It is quite apparent that some one altered the register for the purpose of making evidence in this case, and if it were altered by the defendant, or by his procurement, it was very satisfactory evidence of his guilt.    If it could have been made to appear by the register that the girl was born January 4, 1876, it would have appeared that she was upwards of sixteen years of age when the first act of intercourse took place.    Whether the register was altered by the defendant, or by his procurement, was properly left to the jury, under the instruction that if it were so altered, it was a corroborative fact.

The court did not err in submitting to the jury the question whether the fictitious letter which the defendant asserted he had received from Father English was a fact tending to establish the guilt of the defendant.    For some years prior to November 28, 1888, the girl, who was an orphan, had been cared for at St. Mary's Convent at Canandaigua, and, on the date mentioned, she was taken from the convent by Mr. and Mrs. Noonan, with whom she resided until about the time her child was born.    Father Dennis English had charge of this convent.    On the 6th of February, 1893, the girl, then within six weeks of her confinement, was staying at the house of Mrs. Eliza Skillen.    At this time the defendant had been called before his bishop and charged with misconduct with the girl.    On the date mentioned the defendant went to Mrs. Eliza Skillen's and asked to see the girl, who at the time was in bed on the second floor, and also asked when she was expected to be confined.    The defendant said to Mrs. Eliza Skillen that he had a letter from Father English of Canandaigua, directing him to take charge of the girl. On the same occasion he made the same statement to Miss Eliza Skillen and to Robert H. Skillen, both of whom he tried to have read the letter after having stated its contents to them.    The defendant was so persistent in his attempt to see the girl that he went up stairs to her bedroom without the permission, or the very active opposition, of Mrs. Eliza Skillen and her three children, where he found the girl lying in bed.    He handed a letter to the girl, which purported to be from Father English, directing the defendant to

take charge of the girl. The girl read the letter and handed it to the defendant. Jennie Skillen, another member of this family, saw the girl hand a letter in an envelope to the defendant, which he put in his pocket. Father Dennis English testified that he never wrote such a letter. The defendant did not take the stand and deny that on February 6, 1893, he attempted to get possession of the girl by means of a forged letter, nor was the evidence of the five witnesses in respect to what the defendant said and did about the letter contradicted or in any way impeached. This evidence was relevant for the purpose of showing the intent of the defendant to get possession of the girl by deceit. What effect should be given to this evidence was properly left to the jury.

It is urged in defendant's seventh point that the court erred in permitting Jennie Skillen to testify at folios 1038 to 1043 to the reasons given by Mary Sweeney to her nine months after the intercourse, why such intercourse occurred. This witness was called by the People to prove the interview of February 6, 1893, in respect to the letter, and she gave no evidence on her direct examination except to detail what she saw and heard on that occasion. The record is incorrectly folioed; at the bottom of page 202 the folio is 1010, at the top of page 203 the folio is 1111, and the subsequent pages are consecutively folioed to the bottom of page 204, where the folio is 1120 and is succeeded on the top of page 205 by folio 1021. The printed record does not show where the defendant's cross-examination of this witness began, but it was conceded on the argument that it began on page 204 immediately after the line " He left the house about a quarter of five." After asking the witness a few questions in respect to this interview, the defendant's counsel interrogated her as to various other matters. He asked her when the girl disclosed that she was with child, and called out from her what the girl said about it, and that she said Father Flaherty was the author of her trouble. The defendant's counsel further proved that this witness communicated the statement to her mother and sister on the same day. On the redirect examination the witness was asked to repeat so much of the conversation with the girl as she could recollect, or the substance of it, and she testified that the girl said that the defendant could not harm any one ; that he was a good man, a pure man ; that he

could not harm her, and that the defendant had taught her that. This evidence was objected to by the defendant's counsel. He having given part of the conversation, it was competent for the People to give the remainder, which related to the subject gone into by the defendant.

The court did not err in refusing to advise the jury to acquit the defendant, or in denying his motion for a new trial made after the verdict, on the ground that it was contrary to the evidence.

The testimony of Mary Sweeney was not " unsupported by other evidence," as required by section 283 of the Penal Code. The People elected to ask a conviction for the act committed on Saturday, May 28, 1892. The girl gave the date as May twenty-ninth, but the evidence shows that it occurred on the Saturday before Decoration Day, which was on Monday. This date is also fixed by the fact that Miss Kate Ryan died Friday, May 27, 1892, and that a wake was held at the house of her mother on that night and on the succeeding night. The girl testified that the intercourse on this occasion occurred at the house of Mrs. Noonan, where she was then living, between seven and eight o'clock in the evening. She also testified that while the defendant was there Mrs. Sawyer, a neighbor, came to the door and then went around to the woodshed, but was not admitted; that after the defendant had left Mrs. Sawyer came again after Mrs. Noonan had returned to the house. Mrs. Sawyer was called and testified that last spring or summer she went to Mrs. Noonan's house, rang the bell, failed to get in, and afterwards went back and was admitted. She thought the occasion was the latter part of May, between seven and eight o'clock in the evening. She testified that she found Mary Sweeney trimming a straw hat, and Mary Sweeney testified that she was so occupied when the defendant called. There is much other evidence supporting the testimony of the girl that the defendant was with her alone on other occasions when she testified that intercourse occurred. But it is unnecessary to refer to all the evidence which supports the testimony of the girl. The forged letter and the altered record have been referred to.

When this action was reviewed after the former trial, the General Term expressly held that a question of fact was presented for the jury. It is not asserted that the evidence on this trial is

materially· different from that given on the former trial, except that two young men testified in behalf of the defendant to acts of familiarity with the girl in the month of June, 1892, indicating that they had intercourse with her, though when put the precise question they refused to answer on the ground that their evidence would tend to criminate them. ·

The fact that the child was born .292 days after May 28, 1892, does not discredit the testimony of the girl that intercourse occurred on that date. The medical testimony was to the effect that the ordinary period of gestation is. from 270 to 280 days, but that it is sometimes prolonged·to 290. days. · Whether the child was the result of that act or of a subsequent act of intercourse is immaterial. The girl testified to two·acts in June, 1892, which were within 280 days of the birth of the child.

All the questions discussed by the learned counsel·for the defendant on his brief or at the bar of this court have been considered,·and no valid reason is found for disturbing the judgment, which should· be affirmed.

All concurred.

Conviction, judgment and order affirmed, and judgment to be entered in accordance with section 547 of the Code of Criminal Procedure and case remitted to the County Court of Livingston county, with directions to proceed.· ·